## JUNKERS v. CHEMICAL FOUNDATION, Incorporated.

(District Court, S. D. New York. December 9, 1922.)

**1. Treaties ⚙=6—Subsequent treaty prevails over inconsistent provisions of former treaty.**

The treaty of peace with Germany signed August 25, 1921, must prevail over the treaty with Prussia of 1799 in so far as any of its provisions are inconsistent with the former treaty.

**2. War ⚙=34—Treaty with Germany prevents German from claiming under patent seized by Alien Property Custodian.**

Under the Treaty of 1921 with Germany, which gave the United States the advantages of the provision of the treaty of Versailles providing that no claims shall be made or action brought by German nationals in respect of any rights in industrial, literary, or artistic property, nor the sale or use of any products, articles, or apparatus to which such rights applied, a German is not entitled to bring suit for the infringement of a patent, which had been seized during the war by the Alien Property Custodian, and transferred by him to defendant, even though the transfer was invalid as against the United States.

**3. War ⚙=12—Permission to enemies to sue for infringement of patent does not apply, where patent has been seized by Custodian.**

The provision of Trading with the Enemy Act, § 10 (g), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ee, that any enemy might institute and prosecute suits to enjoin infringement of letters patent, is limited, in view of the provisions of section 12 (section 3115½ff), relating to the powers of the Alien Property Custodian, to patent rights which had not been seized by such Custodian.

In Equity. Suit for infringement of patent by Hugo Junkers against the Chemical Foundation, Incorporated. On motion to dismiss the bill. Motion granted.

This is a motion to dismiss the bill filed by complainant (1) on the ground that it does not state a cause of action; and (2) that complainant has no legal capacity to sue. The bill seeks to enjoin the defendant from infringement of letters patent granted by the United States on aeroplanes, and for an accounting of profits. It alleges that prior to the war with Germany complainant was the owner of the patent, and at the outbreak of the war became an enemy alien; that the Alien Property Custodian, under the Trading with the Enemy Act, seized the letters patent on July 16, 1919, and that without consideration thereafter transferred the patent to the United States government for the use of the Navy Department, which transfer "was and is a license to the use of the same"; that on February 19, 1921, "the United States government, as represented by the Navy Department, did, without receiving compensation therefor, * * * transfer the said patent to the defendant."

Guthrie, Jerome, Rand & Kresel, of New York City (William D. Guthrie and Bernard Hershkopf, both of New York City, of counsel), for the motion.

Alexander Karlin, of New York City, opposed.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). As this cause comes up on a motion which is equivalent to a demurrer, it must be conceded for the present purpose that the United States obtained a conveyance of the patent without consideration, and transferred it to the defendant in like manner.

[1] The provisions of the Trading with the Enemy Act clearly de-

---

⚙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fine the rights of the parties. The Treaty with Prussia of 1799 (8 Stat. 174) has no bearing upon the situation, for the only clauses which might conceivably relate to the property of Germans are directed to German merchants *residing* in this country—a class to which the complainant avowedly does not belong. Stoehr v. Wallace, 255 U. S. at page 251, 41 Sup. Ct. 293, 65 L. Ed. 604. Moreover, the recent subsequent treaty of peace with Germany, signed August 25, 1921, must prevail over the Treaty of 1799, so far as any of its provisions are inconsistent with the former treaty. The Chinese Exclusion Case, 130 U. S. 600, 9 Sup. Ct. 623, 32 L. Ed. 1068; Fong Yue Ting v. United States, 149 U. S. 720, 13 Sup. Ct. 1016, 37 L. Ed. 905.

[2] The recent treaty gave the United States the advantages of the Treaty of Versailles which provided that Germany undertook to compensate her nationals in respect of the sale or retention of their property (part 10 of Treaty of Versailles, article 297 [i]), that no question should be raised as to the regularity of a transfer of any property rights or interests, and that:

"No claims shall be made or action brought by Germany or German nationals in respect of the use during the war by the government of any allied or associated power, or by any person acting on behalf or with the assent of such government, of any rights in industrial, literary, or artistic property, nor in respect of the sale, offering for sale, or use of any products, articles or apparatus whatsoever to which such rights applied."

These provisions would seem to stand in the way of any present claim of the complainant. Any irregularities of transfer by the Alien Property Custodian are beyond question so far as German nationals are concerned. Whatever rights the United States may be able to assert against the defendant, if the patent has been given away, can be no concern of the complainant, whose claims are barred by the treaty.

[3] The last question involved relates to the effect of the Trading with the Enemy Act upon the patent in suit. No doubt seems to have been cast upon the validity of the seizure by the Alien Property Custodian. Under section 12 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff) it is provided that:

"After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct. * * *"

By a prior subdivision of section 12 it was enacted:

"The Alien Property Custodian shall be vested with all of the powers of a common-law trustee in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered or paid over to him in pursuance of the provisions of this act. * * *"

While the Alien Property Custodian is a common-law trustee, he holds the property, not in the interest of the former owner, but in the public interest. The former owner, by some future act of Congress, may be allowed recognition in respect to property seized. Conceivably he may be limited to such remedies as are already covered by article 297(i) of the Treaty of Versailles, under which it is provided:

"Germany undertakes to compensate her nationals in respect of the sale or retention of their property rights or interests in allied or associated states."

At the present time, even upon the assumption made in the bill, the beneficial interest in the patent seems not to be vested in the former owner. Section 10(g) of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ee) provides that:

"Any enemy, or ally of enemy, may institute and prosecute suits in equity against any person other than a licensee under this act to enjoin infringement of letters patent, trade-mark, print, label, and copyrights in the United States owned or controlled by said enemy or ally of enemy, in the same manner and to the extent that he would be entitled so to do if the United States was not at war: Provided that no final judgment or decree shall be entered in favor of such enemy or ally of enemy by any court except after thirty days' notice to the Alien Property Custodian. Such notice shall be in writing and shall be served in the same manner as civil process of federal courts."

The only serious question which I have had to consider is whether section 10(g), supra, relates to cases like the present, or embraces only those where the Alien Property Custodian has made no seizure. It is to be noted that section 12 of the Trading with the Enemy Act, in its original form, only provided that the Alien Property Custodian should be vested with all of the powers of a common-law trustee and should manage property coming into his possession—

"and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights which may be or become pertinent thereto or to the ownership thereof, if and when necessary to prevent waste and protect such property and to the end that the interests of the United States in such property and rights or of such person as may ultimately become entitled thereto, or to the proceeds thereof, may be preserved and safeguarded."

An amendment of March 28, 1918, gave the Alien Property Custodian clearer, if not wider, powers, and enacted that he should—

"have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof. * * * *"

In order more clearly to provide for the seizure of enemy-owned patents, which in the original Trading with the Enemy Act had been treated as though the subjects of licenses, rather than of seizure, these patents, by an Amendment of November 4, 1918 (40 Stat. 1020), were specifically referred to among the classes of property which might be seized and were rendered transferable upon seizure by filing in the Patent Office a demand on the part of the Alien Property Custodian. Section 10(g), permitting the prosecution of infringement suits by enemy aliens, is limited to cases where the letters patent are "owned or controlled" by an enemy alien. The act empowered the government to license enemy aliens, and the enemy aliens while thus licensed would still hold title to their property. After seizure by the Alien Property Custodian the enemy alien no longer "owned or controlled" the patent, and consequently did not come within section 10(g) of the

Trading with the Enemy Act. It is to be noted that without that provision patents which had not been seized would have had no protection, because a suit by an enemy alien, except for the privilege given under section 10(g), would not have been allowed to proceed in our courts. After seizure, however, the original owner had no title, legal or equitable, which he could assert. The present suit, having been instituted by an enemy alien after lawful seizure of his patent by the Alien Property Custodian, is without legal foundation.

The motion to dismiss is granted. Settle order on notice.