[Civ. No. 1703.   Fourth Appellate District.—May 9, 1935.]

EARL E. HOLWICK, Appellant, v. HENRY A. WALKER
et al., Respondents.

670

James F. McBryde for Appellant.

Lee A. Dayton for Respondents.

MARKS, J.—Plaintiff brought this action to secure the rescission of the sale to him of a fountain lunch business in the Bear Market in Glendale, California, the cancellation of his promissory note for $110 given as part of the purchase price, and the recovery of $990 paid on the purchase price. Judgment went for defendants and this appeal followed.

While various fraudulent representations are set forth in the complaint the evidence has limited them to but two which are necessary to be here considered. (1) (a) The validity of a sublease where the lease and sublease contain provisions against subleasing and assignment without the written consent of the lessors and the sublessor, and (b) the validity of a sublease which did not have attached to it the seal or the signature of an officer of the subleasing corporation. (2) The cost of an awning used on the subleased premises.

The premises in question here constituted a stall in what was known as the Bear Market. The building was owned by D. C. and Mary A. Bear. They leased the premises in question to the Dutch Chain Stores, Inc. It in turn subleased to defendants. Both the lease and the sublease contained provisions prohibiting the lessee and the sublessees from assigning or subleasing without the respective written consents of the lessors and the sublessor. The sublease to defendants was dated March 9, 1931, and was signed "R. L. Anderson, Sublessor". Defendants paid their rent and remained in undisturbed possession of the premises until they delivered possession to plaintiff on June 16, 1932. The possession of plaintiff was not disturbed. He voluntarily abandoned possession on August 13, 1932.

Plaintiff was a realtor and as such endeavored without success to sell the fountain lunch business for defendants. In the latter part of May, 1932, he conceived the idea of purchasing the business for himself and negotiations were consummated on June 15, 1932, plaintiff paying defendants $900 in the form of a check, $90 in back rent, $110 in a promissory note, and the assumption of about $424 unpaid on a lease contract covering fixtures which defendants were purchasing from Western Dairies, Inc. Defendants had paid $625 advance rent at the time they received their sublease. In the sale plaintiff received the benefit of this credit. Plaintiff stopped payment on his check on the day it was given. The next morning he had further negotiations with Henry A. Walker and either D. C. Bear or Hayden Bear, his son, or both, and the $900 was paid defendants on that day and possession delivered to plaintiff.

Plaintiff alleged in his complaint as one of the grounds for cancellation of the sale "that the defendants, and each of them, as a part of the sale, agreed to assign, transfer and set over the good and valid lease on said premises to the plaintiff herein for the term of three years and three months, at a monthly rental of $125.00 with a refund of $37.50; but that no such lease or assignment of lease has been furnished to the plaintiff". This allegation was supported by the testimony of plaintiff.

The trial judge found that the quoted allegation was untrue. In measuring the sufficiency of the evidence to support

this finding we must disregard conflicts in the evidence and devote ourselves to a consideration of the evidence supporting the questioned finding.

Plaintiff had physical possession of the lease and sublease and read at least portions of them. He consulted D. C. Bear, and also Hayden Bear, who was apparently acting as superintendent of the various places of business in the Bear Market, about buying the fountain lunch business from defendants. He was advised by them that he would be a satisfactory subtenant should he purchase the business of defendants. The books of account of the various tenants in the Bear Market were kept in the office of Hayden Bear. The books showing the accounts of defendants were inspected by plaintiff. Plaintiff, in company with Walker, consulted a Mr. Taylor, an executive officer of Western Dairies, Inc., and learned all the details of the business transactions between that corporation and defendants and secured permission to assume and perform defendants' obligations under their contracts with it. Mr. Taylor, in the presence of Walker, advised plaintiff to place his money and note in escrow to be delivered only upon the satisfactory consummation of the entire transaction. Plaintiff refused to act upon this advice. It is evident that he made his own investigation and relied upon his own judgment in making the purchase from defendants.

■ Plaintiff now claims that the sublease from Dutch Chain Stores, Inc., to defendants gave them no leasehold interest in the property because it was signed by "R. L. Anderson" as sublessor and there is no showing that Anderson was an officer of the corporation or had authority to bind it by his signature. The only evidence of the authority of Anderson was that he was acting for the corporation in supervising subleases. Further inquiry by defendants as to his actual authority was cut off by the trial judge on objections made by counsel for plaintiff.

As a part of this phase of his case plaintiff is maintaining that Anderson had no authority to execute the sublease. The burden of proof is on the party asserting the affirmative of an issue. We cannot conclude that plaintiff has maintained this burden in the absence of any evidence supporting his contention. ■ The board of directors of a corporation may delegate authority to execute leases and subleases to one

of its agents. We cannot assume that such authority was not given Anderson merely for the purpose of reversing the judgment of the trial court.

Furthermore, the insufficiency of the execution of the sublease did not come into the case until August 6, 1932, thirty-two days after the service of what plaintiff maintains was his notice of rescission. This notice said nothing about a defective sublease. On August 6, 1932, counsel for plaintiff had a conference with Hayden Bear. Mr. Bear informed the attorney that he might have difficulty in approving the sublease and its assignment to plaintiff if Anderson's authority was not shown. The attorney then wrote defendants complaining of the manner in which the sublease was executed. Defendants proceeded to have this defect remedied and on August 24, 1932, the board of directors of Dutch Chain Stores, Inc., passed a resolution affirming and ratifying the action of Anderson in signing the sublease.

It is evident from a study of the record that plaintiff knew of the provisions against subleasing and assignment during the early part of his negotiations with defendants. It is also evident that plaintiff relied upon the verbal statements of D. C. and Hayden Bear to him that should he purchase the fountain lunch business he would prove an acceptable tenant to them. It is evident that at the time of his purchase he neither expected nor required defendants to secure a written consent to the sublease or its assignment to him.

The complaint alleges that "defendants falsely and fraudulently represented to plaintiff . . . that the awning cost $200.00 whereas it only cost $125.00 . . . " The trial court found that this allegation was untrue. The evidence on the question is conflicting and there is material and competent evidence in the record supporting the finding. It therefore cannot be disturbed here.

Plaintiff now urges that the awning was never delivered to him. The evidence is clear that this awning was not used during the spring and summer months. It was regularly stored about the first of May and was not used again until late fall or early winter. Defendants paid the storage bill and plaintiff knew it was in storage. He made no effort to get it nor did he request its possession from defendants. Even though we assume that the question of non-

delivery of the awning can be considered under the pleadings plaintiff cannot place defendants in default for its non-delivery without a demand for its possession when he knew it was absent from the place of business he was purchasing prior to the time he made the purchase.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.