**AUTOMATIC FIRE ALARM CO. et al. v. BOWLES, Price Administrator.**

**No. 105.**

United States Emergency Court of Appeals.

Heard at New York, April 3, 1944.

Decided July 3, 1944.

As Amended July 26, 1944.

Irving Smith, Jr., of New York City, for complainants.

Ernest R. Mortenson, Atty., and Jacob D. Hyman, Chief Court Review Price Branch, Office of Price Administration, both of Washington, D. C. (Richard H. Field, Acting Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Benjamin Chapman, Atty., and Josephine H. Klein, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MARIS, Chief Judge.

The complainants are three corporations engaged in New York, Philadelphia and Boston, respectively, in the business of rendering fire alarm protective service. One of them also furnishes burglar alarm service.

On August 4, 1943, the Price Administrator amended Section 1499.101(c) of Maximum Price Regulation No. 165—Services, by adding to the services to which the Regulation applies the following additional services:

"(66) Equipment used for the detection of, and protection against fire, theft, burglary and sabotage (including but not limited to fire alarms, burglar alarms, watchman boxes, sprinkler systems, and electrical or mechanical devices used in connection therewith for the detection of, and for protection against, loss or damage by fire, theft, burglary, or sabotage)— maintenance, repair, rental, supervision, operation, inspection, or installation (except installation of sprinkler systems)."[1]

On October 1, 1943, complainants filed a joint protest against this amendment of the Regulation. The protest was denied on November 3, 1943. Thereupon the present complaint was filed which seeks to set aside the amendment to the Regulation in question in whole or in part. The complaint is based upon the ground that paragraph (66) above quoted is invalid as beyond the power of the Administrator under the Emergency Price Control Act. Before discussing this question it will be helpful to consider the nature of the business in which the complainants are engaged and which the Administrator has sought to bring under price control by the amendment in question.

The complainants solicit and obtain contracts for automatic central office fire alarm service, central office sprinkler valve alarm service, central office sprinkler supervisory service, manual central office fire alarm service, and combination manual central

---

[1] Amendment 26 to M. P. R. 165, 8 F. R. 10939.

office and interior fire alarm service. Pursuant to such a contract a complainant installs in its customer's premises the equipment required for the detection of fire, or of waterflow in the customer's sprinkler system, as the case may be, for the electrical transmission to the central office of appropriate signals and in some instances the ringing of bells in the protected premises, and also for the transmission to the central office of supervisory or trouble signals indicating that the complainant's equipment or the customer's sprinkler system is not in normal operating condition. The use, control, and, with very infrequent exceptions, the ownership of the devices thus installed in the customer's premises are retained by the complainant. The devices are connected by telephone wires, leased from the local telephone company, with the central office at which the various signals are received.

At a complainant's central office fire signals received from a customer's premises are relayed to the local fire department as are waterflow signals when received outside of business hours. When waterflow signals are received during business hours the customer is communicated with by telephone and the cause ascertained. Upon receipt of any signal, whether fire, waterflow, tank alarm, supervisory or trouble, a complainant's practice is for one of its employees from the central office to respond immediately by visiting the customer's premises from which the signal was received, investigating and ascertaining the cause and if possible restoring the equipment to normal operation. An employee at the central office also communicates by telephone with the person in charge of the protected building.

These protective systems are installed, operated, maintained and kept in repair by the complainants. They are periodically inspected by the complainants' employees to the end that they may be kept in proper operating condition. The complainants also solicit and enter into sprinkler valve alarm and sprinkler supervisory service contracts for operation by the American District Telegraph Company, which company installs the necessary equipment, the complainants paying for the transmitters and manual fire alarm boxes installed and receiving a percentage of the revenue. The complainants do not, however, participate in any way in the installation, maintenance, or operation of equipment thus installed by the American District Telegraph Company nor do they render any service with respect thereto.

Only in unusual instances are the systems which we have described sold. On the contrary the almost universal practice is for title thereto and control thereof to be retained by the complainants or the American District Telegraph Company, as the case may be, the contracts providing that the equipment "shall be and remain personal property owned solely by" them and that they are authorized to maintain, inspect, test and repair it. The contracts are normally for five year periods and provide for automatic renewal from year to year unless a specified notice of termination is given by either party. They provide for a charge, usually payable annually in advance, for the maintenance and operation of the system. It is established by the record and admitted by the Administrator in his answer that no charge is made by the complainants for repairs or replacements and that only in rare and exceptional cases do complainants make any charge for installation.

It will be seen that the Administrator by the amendment here under attack has sought to bring within the purview of Maximum Price Regulation No. 165 services rendered in the maintenance, repair, rental, supervision, operation, inspection and installation of equipment used for the detection of and protection against fire. It is the complainants' basic contention that insofar as the Administrator seeks by the Regulation to establish a maximum rate of charges for services rendered in the maintenance, supervision, operation and inspection of such equipment he is exceeding the authority conferred upon him by the Act. They do not seriously contest the Administrator's right to establish maximum charges for services rendered in the repair, rental or installation of such equipment, but they point out that they do not rent their equipment and make no charges for its repair and only in very rare instances for its installation. In this contention they are, as we have already said, supported by the record. The Administrator contends, however, that since the complainants obligate themselves under their contracts "to maintain such signalling system in good working order" they have the equivalent of an obligation to keep the system in repair. From this he argues that keeping the signalling equipment in repair is the major

consideration for the charges which the complainants make.

We think that the Administrator's contention is untenable. The equipment which the complainants install in their customers' premises is and remains their own property. It constitutes the tools with which they perform the protective services for which their customers pay. Of course the complainants install the equipment and keep it in repair but in installing and repairing it they are merely installing and repairing their own tools and for so doing they customarily make no charge. What they do charge their customers for is the protective service which they render those customers through the continuous daily and hourly use of these tools. In other words their service is the constant maintenance and operation of the system installed in the customer's premises in conjunction with the central office with which it is connected, whereby signals received at the central office from the equipment installed in the customer's premises are at once reported, relayed to the proper authorities, and investigated, to the end that the customer's sprinkler system may be maintained at all times in working order and that when fires occur the promptest possible notice thereof may be given to the fire fighting forces. The customer has no interest in adorning his building with intricate electrical devices; what he pays for is prompt notification of trouble in his sprinkler system and of the outbreak of fires in his building. Without this latter service the electrical devices are wholly useless to him. See the analysis of business similar to that of the complainants in Missouri Dist. Telegraph Co. v. Morris & Co., 8 Cir., 1917, 243 F. 481; Browne v. National District Telegraph Co., Pub. Serv. Comm. N. Y., P. U. R. Ann. 1921A, 113; Holmes Electric Protective Co. v. McGoldrick, 1941, 262 App. Div. 514, 30 N.Y.S.2d 589, affirmed 288 N.Y. 635, 42 N.E.2d 737.

█ We conclude that the service which each of the complainants renders to its customers and for which its charges are made consists of the constant maintenance, supervision, operation and inspection of its whole system—the continuous carrying on of the central office activities in response to signals received from the equipment constantly kept operable in the customers' premises. We accordingly turn to the Act to ascertain whether there is warrant therein for the Administrator's regulation of the complainants' charges for services in the maintenance, supervision, operation and inspection of fire detection equipment in this sense.

█ We observe at the outset that the Emergency Price Control Act is directed to the control only of the prices of commodities and the rents of housing accommodations. Services of the character here involved are obviously not commodities within the ordinary meaning of the term. Section 302(c) of the Act, 50 U.S.C.A. Appendix § 942(c), however, somewhat expands the ordinary meaning of the term by providing that when used in the Act "commodity" means not only "commodities, articles, products, and materials," but also includes "services rendered otherwise than as an employee in connection with the processing, distribution, storage, installation, repair, or negotiation of purchases or sales of a commodity, or in connection with the operation of any service establishment for the servicing of a commodity." It will thus be seen that the Act specifically includes services rendered in connection with the installation or repair of a commodity. The Act, however, does not state that the term "commodity" is to be construed as including in its meaning services rendered in connection with the maintenance, supervision, operation or inspection of a commodity. Nor do we think that this meaning is to be implied. While the Act is to be given a liberal construction in order to effectuate its highly remedial purposes, it is clear that those purposes are to limit the prices of commodities and rents. Services are not commodities in the ordinary and accepted meaning of that term and they are, therefore, not within the spirit or purpose of the Act except to the extent that they are expressly directed by the Act to be considered as commodities. Compare State v. Standard Oil Co., 1912, 61 Or. 438, 123 P. 40, 43, Ann.Cas.1914B, 179.

The Administrator, while apparently not defending the inclusion in the Regulation of the words "maintenance," "supervision," "operation," and "inspection," argues that maintenance is the equivalent of repair and that consequently the inclusion in the Regulation of maintenance services is supported by the statutory definition which includes repair services. While maintenance doubtless includes the idea of keeping in repair it has a very much broader meaning which is well illustrated by its use in complainants' contracts where it involves the con-

cept of supporting, sustaining, carrying on and continuing the system of fire alarm protective service which they provide.

■ That the Administrator himself recognized that the words "maintain" and "repair" are not synonymous is indicated by the fact that he used them both in the amended Regulation. For if the words were synonymous it would have been enough for him to have used but one of them and the use of both would have been wholly unnecessary. Having used the statutory word "repair" he covered the whole ground allotted to him by the Act. We conclude that there is no warrant in the Act for the Administrator's inclusion in the amended regulation of services in connection with the maintenance, supervision, operation and inspection of fire protection equipment, to the extent that these services involve more than the repair of such equipment and that to the extent that they involve no more than repair their inclusion is unnecessary.

■ The Administrator urges in the alternative that complainants' services are subject to the Act in that they are rendered in connection with the processing, distribution and storage of commodities or in connection with the operation of a service establishment for the servicing of commodities, both being within the definition contained in Sec. 302(c). He argues that the protected buildings and also their contents are being serviced by the complainants. But aside from the fact that the Administrator has not sought to regulate complainants' services on these grounds we think it clear that his contention is not well founded. For buildings upon land are real estate and not commodities, within the meaning of the Act. As for any commodities which may be processed, distributed or stored in buildings which are being protected by the complainants it seems clear that complainants have no contractual obligation to furnish service with respect to such commodities unless their customers who own the buildings are also interested in the commodities kept therein. And even if a complainant's services rendered to one who owns both the building and the commodities processed, distributed or stored therein can be construed as constituting services rendered in connection with the processing, distribution or storage of commodities within the meaning of the Act, as to which we express no opinion, it will be observed that the scope of the Regulation is not restricted to such cases.

■ Finally the Administrator suggests that he has authority under Sec. 302(a) of the Act to regulate the maximum prices charged for "sales, dispositions, exchanges, leases, and other transfers" of commodities, and that the complainants transfer or dispose of their equipment to their customers when they install it in their customers' premises. But the Administrator has not sought to regulate the complainants' charges on this basis. If he should seek to do so he would be met by the fact that the complainants retain title to the equipment and also possession of it, in the sense that it is locked against manipulation by their customers, and that it remains in reality their tools of service. Under these circumstances it would be difficult to discover in these transactions a disposition or transfer within the meaning of the Act.

■ A word must be added with regard to the fact that the protest was also directed to the amendment insofar as it relates to burglar alarm service. The Administrator dismissed the protest against this part of the Regulation as not timely filed. He pointed out ·that paragraph (28) of Sec. 1499.101(c) of the Regulation had previously included burglar alarms and he concluded that since the complainants had failed to protest that paragraph of the Regulation within 60 days after its issuance they were barred from protesting the subsequent amendment covering the same subject. In this we think the Administrator erred. Paragraph (28) referred to "Furniture and household equipment;" it is clear it did not include the sort of central office burglar alarm systems which the complainants provide.

The point is of no great importance, however, for the Administrator concedes that the complainants' burglar alarm services are in all material respects the same as their fire alarm services and that his statutory authority with respect to the two types of services is identical. Accordingly he very properly stated in his brief that "Should this Court decide that Complainants' fire-alarm services are not subject to price control by the Administrator, * * * the Administrator would, of course, revoke the regulation so far as it covers the burglar-alarm services here in question".

Judgment will be entered setting aside Section 1499.101(c) (66) of Maximum

Price Regulation No. 165—Services, as amended, insofar as it subjects to price control services rendered in connection with the maintenance, supervision, operation or inspection of equipment used for the detection of and protection against fire, theft and burglary, to the extent that those services involve more than the installation or repair of such equipment and are not rendered in connection with the processing, distribution, storage or negotiation of purchases or sales of a commodity or in connection with the operation of any service establishment for the servicing of a commodity.