**BOWLES, Price Administrator, v. CHAMBERLAIN.**

**No. 432.**

District Court, W. D. Missouri, S. D.

April 5, 1946.

Dick F. Bennett, Ralph E. Griffith, and Joseph Koralchik, all of Kansas City, Mo., for plaintiff.

Nat W. Benton and John W. Miller, both of Springfield, Mo., for defendant.

RIDGE, District Judge.

Plaintiff brings this action in two counts, as Administrator of the Office of Price Administration, to enjoin defendant from violating Sec. 4(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 904(a), and to recover treble damages for alleged overcharges exacted by defendant in the sale of canned blackberries to the United States Government.

Defendant owns and operates a canning company at Anderson, Missouri. On August 10, 1944, defendant sold, to the United States Government, 800 cases of No. 2 can, and 14,460 cases of No. 10 can blackberries. The No. 2 can berries were sold at $2.66 per dozen cans, and the No. 10 can at $11.098 per dozen cans. The total

sale price for both quantities of canned blackberries was $83,864.14. Plaintiff claims that in consummating said sale defendant exacted and was paid, by the United States Government, $0.5265 per dozen cans, in excess of the maximum allowable price permitted to be charged for the No. 2 can blackberries under Maximum Price Regulation No. 306 of the Office of Price Administration. The total overcharge therefor is claimed to be $842.40. In the sale of the No. 10 can blackberries plaintiff claims that defendant exacted, and was paid, $2.7081 per dozen cans, in excess of said maximum price, or an overcharge on that item of $19,579.56.

Plaintiff also claims that in violation of Food Products Regulation 1, and Supplement 7 thereto, duly published by the Office of Price Administration, the defendant, between September 6, 1944, and October 4, 1944, sold and delivered, for use or consumption in the course of trade or business, 3,060 cases of tomatoes for which defendant exacted, and was paid, 11¢ per dozen cans over and above the maximum allowable price permitted to be charged therefor. The total alleged overcharge for said tomatoes amounts to $168.30. Defendant admits making the overcharge for the tomatoes as claimed by plaintiff, but asserts that it was not wilfully made, and, was not made by failure to take practical precautions to comply with OPA Regulations governing the same. Defendant explains said overcharge as being the result of mathematical error and honest oversight. Defendant tenders, by his answer, the amount of the overcharge, made in the sale of said canned tomatoes, with interest. Plaintiff accepts defendant's explanation and, conceding that it probably was due to an error in computation, seeks to recover only the actual amount of such overcharge.

The issue between the parties, concerning the sale of canned blackberries to the United States Government, revolves around the proper method for calculating defendant's maximum price for blackberries in the year 1944. Plaintiff contends that the ceiling price for said berries, under the facts of this case, must be determined by the formula set forth in Sec. 1341.587(2) of Maximum Price Regulation No. 306, promulgated by the Office of Price Administration. Defendant denies that such formula is the correct "measuring rod" to determine his ceiling price for blackberries. Defendant contends that the ceiling price for such berries must be determined by considering the "variety, style, grade and container" of blackberries packed by defendant in 1944, as compared with his 1942 pack of blackberries; that other variables between said packs must also be considered in the determination of such ceiling price. The contentions, so made by defendant, will hereinafter be considered in the course of this opinion.

Blackberries were first brought under control by the Office of Price Administration by General Maximum Price Regulation issued April 28, 1942, effective May 1, 1942 (7 Federal Register 3153). On July 24, 1942, Maximum Price Regulation No. 185, regulating "canned fruit and canned berries" was issued, effective July 29, 1942. This regulation established "canner's maximum prices for canned fruits and canned berries," for the 1942 pack. It set up a formula for canners to follow in establishing their 1942 maximum prices and required the canner to report such ceiling price, and the data used in determining it, to the Office of Price Administration. Maximum Price Regulation No. 306, Part 1341 relating to "canned and preserved foods" was originally issued January 22, 1943 to be effective January 28, 1943. Said regulation set up a formula for determining the 1943 ceiling price for blackberries. Sec. 1341.587(2) of the last-mentioned regulation provided that the processor, in computing his 1943 maximum price for the sales of blackberries, other than to Government Procurement Agencies, should adjust "his maximum price per dozen f.o.b. factory for the 1942 pack of the same variety, style, grade and container" by "(i) deducting the total 1942 raw berry cost per dozen containers as required to be computed under Maximum Price Regulation No. 185" and "(ii) add to the figures so obtained the 1943 raw berry cost per dozen containers." If the processor did not pack the same "variety, style, grade and container" of blackberries in 1942, he could, under Subsec. (4) of said section, adopt "the maximum price of his closest competitive seller," or if that was not available he could, under Subsec. (5) "apply to the Office of the Price Administration, Washington, D. C., for authorization of a maximum price." Said regulation also required processors to file a report with the Office of Price Administration on or before December 31, 1943,

revealing processor's calculation of his maximum price per dozen containers for his 1943 pack. By amendment, effective February 25, 1944, M.P.R. No. 306 was amended so as to make it apply "to items packed on or after January 1, 1944, until such time as they are covered by a superseding regulation."

On October 28, 1942, defendant executed a form computing his ceiling prices under Maximum Price Regulation No. 185 and establishing his ceiling price for blackberries as of August 1, 1942 (plaintiff's Exhibit 10). Among other things, said document reveals that in 1942 defendant listed the "grade" of blackberries processed by him as "pie," and for that grade of berries, packed in No. 2 can containers, he established his maximum price per dozen, f.o.b., cannery at $1.3280. For berries packed in No. 10 can containers defendant established his ceiling price at $6.0791. In conformance with Maximum Price Regulation No. 306 defendant, on December 20, 1943, submitted to the Office of Price Administration, on a form provided therefor, data concerning the calculation of his 1943 maximum price (plaintiff's Exhibit 14). This latter document reveals that the grade of blackberries processed by defendant in 1943 was a "heavy pack" and that, after deducting his 1942 raw berry cost from his 1942 ceiling price and adding to the difference, so obtained, the 1943 raw berry cost, he established a ceiling price in 1943, for blackberries packed in No. 2 can containers at $2.36 per dozen and for those packed in No. 10 can containers at $11.565 per dozen. The following notation appears on said document:

"The grade of berry packed in 1943 was 'Heavy Pack' as against just the regular 'Water' grade in 1941 and 1942. To adjust this difference in grade it was necessary for us to use 1943 yield in dozens per ton rather than 1941 yield."

The purchase order of the United States Quartermaster Corps (defendant's Exhibit E), under which the sale of the blackberries in question was consummated, shows that the grade of the blackberries purchased were to be Grade D "water-pie" pack, in unlabeled cans, and that said purchase was made "firm at 1944 ceilings." The basic price paid per dozen for said berries, as shown by said order, was $2.266 per dozen for No. 2 can containers, and $11.098 per dozen for No. 10 can containers.

Sec. 1341.587(6) provides "the processor's maximum price per dozen containers f.o.b., factory for sales to Government Procurement Agencies shall be 96% of the maximum price for sales other than to Government Procurement Agencies as established under" said regulation. The price established in the purchase order above referred to is 96% of defendant's 1943 maximum price as ascertained by defendant.

On July 20 and 25, 1944, prior to the sale of the blackberries in question to the Government, said berries were graded and inspected by an inspector of the United States Department of Agriculture. The grade established by said inspection was "Grade D, water or pie, Federal Specification Z–B–421 and Amendment 2 dated June 1934." Said inspection also determined the "net weight" the "drained weight" and the "syrup density" of said berries.

In determining defendant's maximum price for the blackberries so sold to the Government, plaintiff contends that it must be calculated by the formula set forth in sec. 1341.587(2) of Maximum Price Regulation No. 306. Using said formula plaintiff computes such ceiling price as follows: For No. 2 water-packed blackberries plaintiff ascertains defendant's 1942 maximum ceiling price at $1.328 per dozen, as shown by the report submitted by defendant to the Office of Price Administration pursuant to Maximum Price Regulation No. 185. From such ceiling price plaintiff deducts defendant's 1942 raw berry cost, amounting to $0.6941. (This cost is also determined from the report submitted by defendant under Maximum Price Regulation No. 185.) To the difference so obtained he adds defendant's 1943 raw berry cost, $1.20. (This cost is established by the report filed by defendant pursuant to Maximum Price Regulation No. 306.) The maximum price so determined is $1.8339 per dozen. Adjusting said sum to the closest half-cent, as provided by said regulation, plaintiff determines defendant's maximum ceiling price to civilians at $1.835. The berries in question were sold to the Government without labels. Sec. 1341.559(a) (1) and (2) requires that when a processor sells any item covered by said regulation, unlabeled in containers, an allowance shall be made by the processor for the cost of the label at not less than $1.50 per thousand and a labor allowance of not less than

one cent per case. Plaintiff determines the sum to be deducted, on account of label and labor allowances, at the sum of $0.023. Deducting this last-mentioned sum from the maximum price to civilians, as above set forth, a ceiling price of $1.812 per dozen, for civilian sales, is thus obtained. The sale in question being to the United States Government, the maximum price allowable is 96% of the price to civilians, or $1.7395 per dozen. In calculating the No. 10 can, water-packed blackberries sold to the Government, defendant follows the same formula. In the documents above referred to defendant's 1942 maximum price, for No. 10 cans, was established at $6.0791 per dozen. Deducting defendant's 1942 raw berry cost of $3.7018 leaves a difference of $2.3773. To this latter sum plaintiff adds defendant's 1943 raw berry cost of $6.40, making a total of $8.7773; adjusted to the closest half-cent defendant's maximum price to civilians, for No. 10 cans, amounts to $8.775. Deducting $0.038 as the cost for label and labor allowances plaintiff determines defendant's ceiling price, for civilian trade, to be $8.7395. Ninety-six per cent of said sum being the maximum price for sales, to the United States Government, plaintiff calculates such ceiling price to be $8.3899 per dozen cans. Thus it is apparent that plaintiff's calculation of defendant's ceiling price is dependent on the reports made by defendant to the Office of Price Administration, concerning his 1942 and 1943 pack of blackberries, and on the assumption that the same "variety, style, grade and container" of berries was packed by defendant in both years.

In contending that the above formula, used by plaintiff, is not a correct measure for determining defendant's ceiling price for the blackberries packed by him in 1944, defendant says that "the crux of this whole question" is that plaintiff simply assumes that defendant packed the same "variety, style, grade and container" of blackberries in both years, because they were both "water packed berries" sometimes called "pie packed berries." (The evidence establishes that "water packed" and "pie packed" are synonymous terms.) The forms, established by the Office of Price Administration, on which processors were required to establish their ceiling price in 1942 and upon which they were required to report their ceiling prices for 1943, designate the "grades" of a pack as "fancy,

choice, standard, water, pie." Under Sec. 1341.565(a) M.P.R. No. 306 such terms when used "mean the grade *at the time of shipment* as established and defined by the United States Department of Agriculture." (Emphasis added.)

It is necessary that a clear understanding be had as to what is meant by the term "grade" as used by the parties herein. This is so for the reason defendant contends that the "grade" of the berries packed by him in 1944 is not the same as those packed in 1942. In that connection defendant asserts that the berries processed by him in 1942 were handled as a "light pack" and that those processed in 1944 were handled as a "heavy pack." The difference between a "light" and "heavy" pack changes the grade of the berries processed in each said years, according to defendant's contention. The evidence establishes that there is a "United States Standards for Grades" promulgated by the United States Department of Agriculture; that such standards are used in commercial grading of berries but not for purchases by the United States Government. When purchases of berries are made by the United States Government a different method of grading is used; that method is known as Federal Specifications Z–B–421. Such distinction in grading is implicitly recognized in Sec. 1341.565(j) of M.P.R. No. 306 which provides "the provisions of this section" (relating to commercial grading) "shall not apply to any products sold to the United States or any agency thereof."

■ The distinction between the United States Standard of Grades and Federal Specifications is in the mechanical process for determining grades and not in terminology or the changing of grades. Both methods recognize "Water-Pie" pack as a grade of berry. The reason for exempting commercial grading from sales to the United States Government, under Sec. 1341.565(j) supra, is that under another section of M.P.R. No. 306, to-wit, Sec. 1341.554 the United States War Department is permitted to purchase and negotiate for berries covered by said regulation when "for some technical reason or in some minor respect" the berries fail "to meet the standards of a particular grade." When such an agreement is made the price to be paid therefor "shall be lower than the price for the lowest grade which the item fails to meet but need not be as low

as the maximum price of the next lowest grade." Grade, as used in said regulation, can only mean commercial grade. The evidence conclusively establishes that the grade of berries processed by defendant in the years 1942 and 1944 are what is known in the commercial world, and under Federal Specifications, as a "water pack" or "pie pack" grade of berry. It is readily inferred from the evidence that the variety, style and container of the berries packed by defendant, in both the years in question, are the same. The only substantial difference between the parties concerning the pack in each said years is whether in 1942 defendant processed a "light pack" and in 1944 a "heavy pack." The United States Standards for Grades specifies 80 ounces of drained weight as constituting a heavy-type pack of blackberries. The Government Inspector, who inspected the blackberries in question prior to the sale thereof to the United States Government, established the average drain weight of the samples used in said inspection to be less than 80 ounces. The drain weight so ascertained, from an inspection of three separate lots of the No. 10 can berries, was 67.75, 59.75 and 65.20 ounces respectively. For the No. 2 can berries the average drain weight was 13.50 ounces. This evidence definitely establishes that the berries processed by defendant in 1944 were a "light pack." The report submitted by defendant, establishing his maximum price for blackberries in 1942, and the testimony of defendant's witnesses, conclusively establishes that the berries processed by defendant in 1942 were a "light pack." From the foregoing established facts in evidence, plaintiff reasonably assumed that the "variety, style, grade and container" of berries processed by defendant in 1942 and 1944 were the same. Consequently the formula contained in Sec. 1341.587(2) of Maximum Price Regulation No. 306 was an appropriate and proper method for plaintiff to use for determining the ceiling price of blackberries sold by defendant in 1944. The calculation so made by plaintiff is correct and in accordance to said formula. The calculation so made, when considered in relation to the sale price of the blackberries in question to the United States Government, established a prima facie case that defendant exceeded the maximum permissible price to be charged for blackberries sold by him in 1944.

To prove that the formula, used by plaintiff in ascertaining and determining defendant's ceiling price for blackberries in 1944, was not a correct one to use, defendant also introduced evidence to the effect that 27% more berries were placed in the containers used by him in 1944, than in 1942, and argues therefrom that said packs cannot be considered as being the same. At no time has defendant contested the average drained weight of the blackberries packed by him in 1944, as established by inspection of the United States Department of Agriculture. Defendant had the right to do so. Defendant's evidence established that in processing a light pack of blackberries in 1942, berries were placed in the containers to within an inch or inch-and-a-half from the top of the container; that in 1944 said containers were filled with blackberries. To sustain his contention that the packs in 1942 and 1944 were not the same, and explain the difference in the average drain weight of the berries in 1944 as ascertained by the United States Department of Agriculture establishing said pack to be a light one, defendant offered further testimony that the berries processed by him in 1944 were cooked longer than in previous years because of the character of the berry and the necessity of preserving them in their containers. Such cooking caused a break down of the berry pulp, according to defendant. The contention so made by defendant does not change the grade of berries packed by defendant in 1944. The average drain weight of the berries after they are processed, no matter how full the containers may have been packed, establishes the grade of the berries according to United States Standard of Grades. Furthermore, under Sec. 1341.565(a) of M.P.R. No. 306, the grade is to be determined "at the time of shipment" and not at the time of placing the berries in their containers.

Defendant also argues that Sec. 1341.551(m) and Sec. 1341.587(a) of Maximum Price Regulation No. 306 requires that the "juices" of the blackberries in question must be taken into consideration in determining the grade of said berries. In this connection defendant says that although said berries were cooked more in the year 1944 than in previous years, and admitting the drain weight thereof may have been less than a "heavy pack" yet the juice from the berries would be more concentrated

and, hence, require a different grade. Plaintiff's evidence is that the juices of the berries in question do not change their grade from a water or pie-pack. Defendant offers no evidence that there is an established grade for berries that are water-packed when the juice thereof is more concentrated than that which is ordinarily obtained in such a pack. Neither does defendant point out how, if the juice of the pack. in question is to be considered, it would change the grade of the berries from a water or pie-pack to some other grade, so as to make another formula available for the establishment of a maximum price for the berries in question. On this point defendant argues that under M.P.R. No. 306, supra, "the sale in question could be made at a price at which the Army deemed fair, although the berries and juices did not meet the standards of a particular grade." Defendant's evidence established no such agreement. Such contention overlooks the fact that defendant's evidence establishes that the berries in question were "purchased firm at 1944 ceilings." This can only mean defendant's ceiling as determined by OPA Regulations. If a price had been agreed upon, as defendant contends, defendant could not, under Rev. Order 56, to M.P.R. No. 306, effective July 13, 1944, have invoiced such berries at a price higher than his maximum price in effect at the time of the delivery thereof, nor receive payment therefor, "until permitted so to do by action taken by the Office of Price Administration."

Defendant offered evidence that in 1941 he processed a "heavy pack" of blackberries as well as a "light pack"; that the differential in price charged for the heavy pack in 1941 was 50¢ per dozen cans above that charged for the light pack. The only sales of heavy pack blackberries shown to have been sold by defendant in 1941 were two sales to the George Rushton Baking Company of Kansas City, Missouri, amounting, in all, to 150 cases of No. 10 cans. The price charged for said berries was $5 per dozen cans. The evidence does not establish what price defendant sold his "light pack". The price was less than the ceiling price established by defendant for his "light pack" blackberries in 1942. The sales so made by defendant manifestly do not establish that defendant had a higher ceiling price for "heavy pack" blackberries in 1942 than he did for a "light pack."

Defendant further contends that in establishing his ceiling price for blackberries in 1944 consideration should be given to Sec. 1341.587(3), which authorizes a processor to establish a maximum price "by the adoption of a competitor's maximum price." Defendant offered testimony tending to establish that out of his 1944 yield he sold to the commercial trade, through a brokerage company in Kansas City, Missouri, blackberries that were billed as "heavy pack" and that the price charged therefor was approximately the same price as charged by competitors of defendant selling the same variety, style, grade and container of blackberries on said market. The evidence conclusively establishes that in determining his maximum price for blackberries in 1943, defendant did not use any competitor's maximum price but, on the contrary, that he established and reported his ceiling price for that year by using the formula that plaintiff uses under Sec. 1341.587(2) of Maximum Price Regulation No. 306, except that defendant included, in said formula, the "yield in dozens per ton."

Defendant further contends that the sales of blackberries to the United States Government were not covered by Maximum Price Regulation No. 306, but were regulated by Supplement 7, to Food Products Regulation 1, issued by the Office of Price Administration. Blackberries were not brought within the purview of this latter regulation until November 7, 1944. The sales to the United States Government in question occurred on August 10, 1944. It is obvious that Supplement 7, to Food Products Regulation 1, is not pertinent to the sales of the blackberries in question.

The evidence introduced by plaintiff made a prima facie case that defendant exceeded his permissible maximum price in the sales of the berries in question to the United States Government. Upon such showing the burden was upon defendant to prove that in 1944 he sold a different "variety, style, grade and container" of blackberries in said year, and for that reason plaintiff's calculations of his maximum price and the formula used by plaintiff in ascertaining such maximum price was not a proper one; this defendant has not done in this case.

Sec. 205(e) of the Emergency Price Control Act of 1942, as amended June 30, 1944, 50 U.S.C.A.Appendix § 925(e), provides that if any person selling a

commodity violates a regulation, order or price schedule prescribing a maximum price, he shall, among other things, be liable for three times the amount of the overcharge, plus a reasonable attorney's fee; but, "if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation" the amount of such recovery "shall be the amount of the overcharge." Notwithstanding the fact that the inspection of the berries in question, by the United States Department of Agriculture, determined the pack of such berries to be a light one, according to United States Standard of Grades and Federal Specifications, yet defendant's evidence leads the Court to believe that in processing blackberries in 1944 defendant did place more berries in his containers than in previous years. The shrinkage and drain weight of said berries was due to excessive cooking. The consequence of such occurrence caused the berries processed by defendant in 1944 to be a light pack. Such an event, in the processing of berries, is a risk assumed by the processor, and one which the processor must assume the responsibility for when the grade of blackberries, canned by him is determined. As above stated, the regulations require the grade to be determined "at the time of shipment." Defendant's evidence established that in 1943 and 1944, because of a shortage of tin cans, his entire yield was processed as a heavy pack. In reporting his 1943 ceiling price to the Office of Price Administration defendant specifically indicated that fact to the Administrator. In his report for that year defendant stated "the grade of berry packed in 1943 was 'Heavy Pack' as against just the regular 'Water' grade in 1941 and 1942. To adjust this difference in grade it was necessary for us to use 1943 yield in dozens per ton rather than 1941 yield." From said statement it is manifest that defendant was treating a "heavy pack" of berries and a "light pack" as constituting a different grade for the berries packed by him. O.P.A. Regulations made no provision for so changing the grade of berries. Defendant's consideration of such a change in the grade was not consonant with United States Standards of Grades, or Federal Specifications for grading berries. Defendant reported this considered change in the grade of berries to the Office of Price Administration on December 20, 1943. No objection was made thereto by the Office of Price Administration. The report submitted by him reveals that he was under the impression, because of the change in pack that he could increase his maximum price by using the formula provided in Sec. 1341.587(2) and inserting into said formula the factor of his 1943 "yield in dozens per ton." Defendant's inclusion of this additional factor in said formula was an error of judgment on his part. It clearly was not intended, by defendant, to deceive the Office of Price Administration or any other person concerning his maximum price for said year. Otherwise defendant would not have openly revealed that fact. Because of the change in the character of the packs processed in 1941 and 1943, defendant could under Maximum Price Regulation No. 306, have applied to the Office of the Price Administrator for authorization of a new maximum price. Whether it would have been granted is very problematical for the grade of defendant's berries was not changed. However defendant failed to do so, as his evidence establishes, because he thought he had the right to increase his maximum price by using the formula provided in Sec. 1341.587(2) by taking into consideration the yield in dozens per ton in said years. In so doing, defendant technically violated O.P.A. Regulations and the formula therein provided for establishing his ceiling price. Defendant's evidence, when fairly considered, shows that this violation "was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." It was an error of judgment and a good-faith misinterpretation of the regulations governing his industry. It is comparable to the error which plaintiff concedes defendant made in mathematically computing the ceiling price for the canned tomatoes sold by defendant, hereinabove referred to.

In the second count of his petition plaintiff prays for triple the amount of the overcharge made by defendant in the sales of blackberries to the United States Government, as a penalty in this case. The Court is of the opinion that defendant's evidence establishes that defendant neither wilfully nor deceitfully increased the ceiling price of the blackberries packed by him in 1944 and sold to the United States Government, and that the overcharge for such berries was not "the result of failure

to take practicable precautions" to avoid such overcharge.

In view of the foregoing, defendant should, however, be restrained from selling blackberries processed by him under the ceiling price calculated by defendant and reported to the Office of Price Administration on December 20, 1943, as above referred to. The amount of plaintiff's recovery, on the second count of his petition, should be the actual "amount of the overcharge" for the blackberries in question, without penalty, to-wit, the sum of $19,579.56, plus the sum of $168.30, being the amount of the overcharge made by defendant in the sale of canned tomatoes.

It is so ordered.