[L. A. No. 20368. In Bank. Apr. 28, 1948.]

MARY HEESY, Appellant, v. RICHARD E. VAUGHN et al., Respondents.

Cantillon & Glover for Appellant.

Albert G. Bergman for Respondents.

SPENCE, J.—Plaintiff appeals from a judgment denying her claims for relief as correlated with her three purported causes of action against defendants: (1) for possession of an automobile; (2) for damages for breach of contract for the sale of the automobile; and (3) for treble damages and attorneys' fees for the alleged sale at a sum in excess of the O.P.A. ceiling price. Conceding that "there was a substantial conflict in the evidence" in connection with her "first two causes of action," plaintiff makes "no attack" upon their determination, but she confines her ground of complaint here to the propriety of the court's adverse disposition of her "third cause of action." A review of the record bearing upon the challenged phase of the adjudication furnishes no support for plaintiff's position and compels an affirmance of the judgment.

It appears that plaintiff on or about November 24, 1944, entered into negotiations for the purchase of a 1940 Cadillac automobile at the Vaughn Auto Lot. The parties are in dispute as to the terms of the transaction. In giving her version at the trial, plaintiff stated that "it was a cash deal" of $2,250 for the car, pursuant to the O.P.A. certificate of available price markup; that she at that time made a down payment of $766.67 and took possession of the car, with the understanding that she could pay the balance "at any time within 30 days"; that within a few days she tendered the sum of $1,540.58—as the balance of the purchase price of $2,250, plus $56.25 sales tax and $1.00 transfer fee—which amount was refused by defendants upon the ground that plaintiff

had signed a "conditional sales contract," which called for $766.67 cash and 15 monthly payments of $154.03 each, or a total purchase price of $3,077.12. Plaintiff had, in fact, signed such a time contract and moreover, she had written upon it at the dictation of the salesman the following matter: "I understand my deal to be as follows: My deal is $766.67 down and fifteen payments of $154.03 each the cash selling price acceptable to Vaughns was $2,250.00. I was not required to buy on time. I was not required to finance with Vaughn's or Vaughn's Finance Co. Mary Heesy." Defendants were agreeable at all times to accepting the sum of $2,310.45, the balance of the installment purchase price, but not plaintiff's offer of only the balance of the cash price. However, plaintiff was unwilling to pay the difference of $827.12, and the present litigation ensued.

This account of plaintiff's financial dealings with defendants coincided with the theory underlying her alleged third cause of action and on which she mainly relied in presenting her case for redress: that while defendants knew that she was intending to make "a cash deal" on the automobile, she was induced to sign the installment contract by false representations and promises that she could have it at the cash price, and that such practice by defendants—inducing cash buyers to execute installment contracts and then insisting on payment of the full price as therein recited—was a device to evade the Emergency Price Control Act and the regulations thereunder. The findings on this issue were against plaintiff; they were made on conflicting evidence, and they may not be disturbed. But then plaintiff raises the question, assuming that she did voluntarily sign the installment contract, whether the nature of her purchase and the price charged were such as to render the sale one made in violation of the Emergency Price Control Act of 1942. (56 Stats. 23, 50 U.S.C.App. §§ 901-946.) Section 925 (e) of the act creates a statutory cause of action against any person selling a commodity in excess of the prescribed maximum price for that commodity. The cause of action runs in favor of the buyer if the purchase was "for use or consumption other than in the course of trade or business"; otherwise, it runs in favor of the Price Administrator only on behalf of the United States.

The court made findings (1) contrary to the allegations essential to plaintiff's recovery under authority of the Emergency Price Control Act, as the issue of violation of the law

was tendered by her third cause of action and defendants' answer in general denial thereof; and (2) in favor of defendants' counterclaim and cross-complaint interposed in reliance upon plaintiff's execution of the conditional sales contract. Thus, the court found that "it [was] not true . . . that plaintiff did not purchase said Cadillac Automobile for use in her business or trade"; that "the maximum ceiling and selling price" of the automobile was "$2,250.00, on a cash basis," that is, "full payment . . . in cash at the time of purchase"; that "it [was] true" that defendants "demanded of plaintiff" the sum of $3,077.12—"$766.67 already paid by plaintiff" and "$2310.45"—and that "the difference between" the sum demanded and "the maximum ceiling price for which" the automobile "could be sold for cash" amounted to $827.12; that "defendants . . . knew that the maximum ceiling price . . . for which" the automobile "could be sold for cash was the sum of $2250.00, and further knew that a sale in excess of such ceiling price for cash constituted a violation of the laws of the United States Government," but that the "demand made upon plaintiff as herein alleged was not made in violation of said laws"; that "it [was] not true . . . that defendants . . . wilfully or in any manner violated the terms and provisions of the Emergency Price Control Act of 1942 . . . or that, in accordance with the terms and provisions of said act, defendants are liable in damages to plaintiff in an amount equal to three times the amount asked and charged" ($2,481.36), or "in any sum," or "for attorneys fees or costs incurred by plaintiff in the prosecution of this action." The court further found in accord with defendants' counterclaim and cross-complaint: that "defendants . . . sold to and delivered the said Cadillac automobile to plaintiff under [the] terms and conditions set forth in [the] conditional sales contract, for [a] total consideration of . . . $3,077.12"— "$766.67 paid . . .at the time of the signing of the aforesaid contract" and "the balance . . . to be paid" in 15 monthly payments of "$154.03," beginning "on the 1st day of January, 1945"; that "plaintiff has failed and refused to pay any sum or installment whatever accruing under the terms of said contract . . .," and "has made no payment whatsoever on account of said conditional sale contract other than the down payment of . . . $766.67 . . . therein provided and set forth"; that "prior to the commencement of [this] action . . . defendants made demand, in writing, upon plaintiff for

the payment of the sum and installment of . . . $154.03 . . . agreed . . . to be paid on the 1st day of January, 1945, . . . but that plaintiff has failed and refused . . . to pay said installment''; and that plaintiff's failure "to comply" with the terms of the contract "terminated" her rights thereunder and defendants, as legal owners of the car, were entitled to the "possession" thereof. Accordingly, judgment was entered in favor of defendants.

It is apparent from the above findings that the court, in disposing of plaintiff's third cause of action, decided the matter against her on two primary points: (1) the absence of her right to maintain the action because she was not a purchaser "for use or consumption other than in the course of trade or business"; and (2) her failure to establish the sale as one in violation of the law. Since the record sustains the trial court's ruling on the second point, it will be unnecessary to consider plaintiff's arguments on the first point.

■ The significant consideration is the fact that the sale in question was made on a time rather than on a cash basis. The automobile could have been sold without a warranty for $1,800—the "base price"—or if warranted by the seller, as it was here, the permitted markup was 25 per cent or $450, making the price $2,250. However, this O.P.A. price listing applicable to a cash transaction did not preclude the negotiation of an installment purchase at a greater amount. On the contrary, Regulation 540 of the Price Administrator, issued under authority of section 921 (d) of the Emergency Price Control Act and in furtherance of the purposes thereof, recognized the place of the time contract in the national economy but specified the operative limitations: that a seller was not permitted to require the purchaser to make an installment purchase or to finance a purchase through any particular lending agency or to make "the terms and conditions of sale more onerous to purchasers than they have customarily been, except to the extent allowed by this regulation." So pertinent is the observation in *Wilson* v. *J. E. French Co.*, 214 Cal. 188, at page 190 [4 P.2d 537], in regard to the economic premise of the price disparity prevailing under a conditional sales contract: "The cash price and the term sale price may logically differ. In an automobile transaction, where the article sold is depreciating, it is perfectly legitimate, if not necessary, that a rather wide margin exist between the cash price and the term price, especially where the down payment is small and the possession of the car is given to the purchaser."

In challenging the sufficiency of the evidence to sustain the finding that the sale of the automobile for $3,077.12—$827.12 over the cash price listing of $2,250—was not in violation of the law, plaintiff cites the failure of defendants to establish the validity of their accepted contract price under O.P.A. Regulation 540. It is true that the record is wholly devoid of any evidence as to defendants' customary financing charges prior to the enactment of the price control legislation. While during the trial defendants sought on several occasions to show that the excess of the installment sales price over the cash price represented only their customary business practice for credit transactions, they did not succeed in their undertaking. Thus, defendant Richard A. Vaughn, after testifying that "there is no prohibition [in Regulation 540] for the sale of an automobile over the cash ceiling price; no limit on ceiling price for time with the exception that you may not charge more than you did prior to the time there was a regulation," was asked these questions: "Did you, Mr. Vaughn, in selling this car on a time basis, violate the Office of Price Administration Regulation No. 540 in any respect?" and "To your knowledge does the total amount of the monies to be paid by Mrs. Heesy as the purchaser under that contract violate Regulation 540 in any respect whatsoever?" To each of these questions plaintiff's counsel successfully interposed the objection "as calling for a legal conclusion." Counsel for defendants then made an offer to prove "by the testimony of this witness" that the carrying charge on the sale of the automobile to plaintiff was "not in excess of the differential charged before the effective date of [O.P.A.] limitation but is way under." At that juncture, plaintiff's counsel interjected these observations: "I am inclined to agree with [defendants' counsel] that it would be a defensive matter for his client to show that he was within that regulation. In other words, we make a prima facie showing that he was without the regulation. That, then, as a defensive matter he would be able to show that before ceilings went on cars that he got this much when he made a time deal. . . . if . . . the witness [should] testify orally on that subject then . . . the only way I could deny it would be by subpoenaing in his books and records to refute that claim of the witness." In reply to these comments as to "the matter of [defendants'] custom, with reference to requirements of the Office of Price Administration" the court said: "I have already sustained [the] ob-

jection [of plaintiff's counsel] to that proof." And in rejecting the offer of proof, the court added: "It [defendants' custom] is not pleaded and I do not think it is material." By this statement the court was apparently referring to the premise of plaintiff's third cause of action, which was drawn to allege, not a conditional sale the terms of which were "more onerous" than "they [had] customarily been," but rather the negotiation of an installment contract as a fraudulent device whereby an actual cash sale would be made for an amount in excess of the cash ceiling price. With such reminder from the court that its exclusion of the proffered testimony was in accord with the stand maintained by plaintiff's counsel, the latter made no effort to withdraw his objection, to amend the complaint, or to introduce in evidence defendants' "books and records" to establish the "more onerous" terms of the contract in question. Moreover, during the discussion with the court, defendants' counsel said nothing to indicate whether he agreed with the position of plaintiff's counsel that plaintiff had made "a prima facie showing" of an overcharge or that the offered proof was necessary defensive matter. With the record standing in that condition, the trial proceeded to its conclusion.

The rule is that the burden of proof lies upon the party presenting "the affirmative of the issue," the one "who would be defeated if no evidence were given on either side." (Code Civ. Proc., § 1981.) Plaintiff's third cause of action alleged defendants' violation of the law by reason of their demand upon plaintiff for an amount in excess of the O.P.A. price listing for the automobile in question, and defendants' answer thereto was in the form of a general denial. Such pleadings put directly in issue the matter of defendants' violation of the law as charged, and the burden was on plaintiff to produce the evidence material to the proof of this essential element of her cause of action. Plaintiff proved the O.P.A. ceiling price for a cash sale of the automobile and the price stipulated under her conditional sales contract with defendants, but she did not establish that the financing charges which made the latter price higher than the former price were more "than they customarily [had] been." In the absence of proof on this latter point, plaintiff did not make out a violation of the law incident to defendants' negotiation of the sale on a time basis. The fact that defendants offered evidence on the matter of their customary financing charges over the years did not

shift the burden of proof to them on an issue raised by plaintiff's pleading and simply traversed in defendants' answer. (*Rancho Santa Margarita* v. *Vail,* 11 Cal.2d 501, 543 [81 P.2d 533].)   As the above recital of the record shows, plaintiff's counsel was aware that defendants' denial of a violation of the law would require "subpoenaing in [the] books and records to refute that claim," yet he made no effort in that direction nor did he withdraw the objection blocking defendants' introduction of testimony as to "the differential charged."   While plaintiff's counsel claimed a "prima facie showing" on the evidence before the court, defendants' counsel did not indicate agreement with such statement nor admit the "burden of going forward with proof" of lack of violation of the law before the affirmative of the issue was established.   The record, therefore, is silent upon a material fact going to the merits of plaintiff's case.   In such situation the court properly determined the point in defendants' favor, for "if there is no evidence upon an issue, the finding should be against the party who has the burden of proof." (*Ellenberger* v. *City of Oakland,* 59 Cal.App.2d 337, 339 [139 P.2d 67] ; see, also, *Rancho Santa Margarita* v. *Vail, supra,* 11 Cal. 2d 501, 543; *Rusconi* v. *California Fruit Exchange,* 100 Cal. App. 750, 755 [281 P. 84] ; *Holwick* v. *Walker,* 6 Cal.App.2d 669, 672 [45 P.2d 374].)

In conclusion, and for the purpose of further clarifying the situation presented by the record before us, certain additional observations should be made.   The issue presented by cases of this kind is whether there has been a violation of Regulation 540 of the Price Administrator, issued under the authority of section 921(d) of the Emergency Price Control Act.   This act is highly penal in nature, and the burden is upon the plaintiff to plead and prove a violation, even to the extent of negativing the statutory exceptions.   (*Lightbody* v. *Russell,* 293 N.Y. 492 [58 N.E.2d 508].)   It is entirely clear that the regulation contemplated both cash and installment sales; that the stated prices governed cash sales only; and that the only prohibition as to terms and conditions on installment sales was that they could not be "more onerous to purchasers than they [had] customarily been" (§ 9).   In other words, a plaintiff cannot be said to have made out a prima facie case of a violation by merely pleading and proving an installment transaction, evidenced by a conditional sales contract, at a price higher than the stated price, which stated

price obviously governed only cash sales. Plaintiff in the present case was entirely aware of this situation. ▮ Throughout the pleadings and during the trial, plaintiff adhered to the theory that the real transaction here was a cash transaction at a price above the cash ceiling price; that she signed the conditional ·sales contract upon the false representation that it was only a formality; and hence she claimed that "said conditional sales contract is not or was not the contract of purchase and sale between the parties." The trial court found against plaintiff upon the claim that the transaction was a cash transaction, and further found that the true transaction was evidenced by the conditional sales contract. There was abundant evidence to sustain those findings. The trial court also found against plaintiff's claim that there had been a violation of the act. ▮ Having proceeded in the trial court upon the sole theory that the true transaction was a cash transaction, at a price above the stated cash ceiling price, rather than a conditional sales transaction, and having lost her case upon conflicting evidence relating to that theory, plaintiff now seeks a reversal upon an entirely different theory which she neither pleaded nor proved. No claim was ever made in the trial court that if the conditional sales contract evidenced the true transaction, the defendants had violated the act by making the terms and conditions "more onerous to purchasers than they [had] customarily been." It was undoubtedly for this reason that the trial court deemed the testimony offered by defendants regarding their customary practices to be immaterial. Its ruling in exclusion of such evidence was therefore proper under the circumstances. ▮ Plaintiff's belated suggestion on this appeal that perhaps she might have been able to prove a violation of the act upon another theory, based upon different pleadings and proof, does not justify a reversal.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

The issue in this case is whether a used automobile was sold for a price in excess of that fixed by the Office of Price Administration. It is said in the majority opinion that the car was sold under a conditional sales contract for a total sale price of $3,077.12, consisting of a down payment of $766.67 and 15

monthly installments of $154.03 each. It is conceded that that sale price is above the O.P.A. ceiling price. It is claimed, however, that such price cannot be said to be excessive because the sale was on time rather than for cash, unless the seller charged more interest and carrying charges than had been his custom and usage prior to the effective date of the price regulation authorized by the Emergency Price Control Law (50 U.S.C.A. App., §§ 901 et seq.). The majority holds, by assumption, and without discussion, that the burden of proving the prior usage with relation to such charges *rested upon the buyer* rather than the seller. This assumption is based on fundamental fallacies.

*It was prima facie a violation of the O.P.A. ceiling price regulation to sell for an excessive price whether the sale was by contract on time or for cash.* There is nothing in the Emergency Price Control Law (50 U.S.C.A. App., §§ 901 et seq.) to the contrary and the regulation promulgated by the Office of Price Administration (Regulation 540) includes both kinds of sales. In that regulation it is first recited that the "prices" for used cars shall be as set forth in the annexed schedule. It is declared that said regulation applies to "*all* sales by dealers and other persons of used passenger automobiles" (reg., art. I, § 1). [Emphasis added.] And that "No person shall sell or deliver any used car at a price higher than the maximum price permitted by this regulation" (Art. I, § 2(1)). A *sale* "includes sales, dispositions, exchanges, and other transfers and contracts and offers to do any of the foregoing. It includes *conditional sales* and sales under rental contracts, lease agreements or other agreements." (Art. I, § 15(c).) [Emphasis added.] It follows, therefore, that a conditional sale for an over-ceiling price, which is the situation we have here, is prima facie a violation of the regulation. The only indication that there is any relaxation from the foregoing provisions appears in the section on "evasions" listing *specific prohibitions* in *addition* to selling at a price above that fixed by the regulation. This section provides that it is a violation of the regulation to charge a price above the maximum, and that the "seller is prohibited from providing for purchase of the used car by a lessee under a rental contract at an agreed valuation which together with the amount paid for the rental is higher than the applicable maximum price at the time the rental contract is entered into, and from the making the terms and conditions of sale more onerous to purchasers than they have customarily been except to the extent allowed by this regula-

tion.'' (Art. I, § 9.) The regulation makes no provision authorizing the seller to add carrying charges to the maximum sale price when the sale is made on time under a conditional sales contract or otherwise. From all that appears in the conditional sales contract here involved, the price quoted is the *sale price* of the car, nothing is said about any other charges. There is no basis for assuming that any such charges, if made, are the same as the seller previously made. How then can it possibly be said that the buyer did not prove enough when he established that there was a sale, the amount of the sale price, and that such price was over the ceiling? If the seller had any justification for the prima facie overcharge he had the burden of showing it.

It should be remembered that the Emergency Price Control Law must be liberally construed to effectuate its remedial purposes. (*Automatic Fire Alarm Co.* v. *Bowles,* 143 F.2d 602; *Bowles* v. *Sago,* 65 F.Supp. 178; *Pfalzgrap* v. *Voso,* 184 Misc. 575 [55 N.Y.S.2d 171]; *Bowles* v. *Haymond,* 59 F.Supp. 482.) In furtherance of that policy it has been held that the *seller* has the *burden* of proving that his overcharge was not wilful and not the result of failure to take practicable precautions (*Duffy* v. *Howell,* 73 Cal.App.2d Supp. 990 [166 P.2d 411]; *Monahan* v. *Jacbos & Politi,* 187 Misc. 332 [66 N.Y.S.2d 207]; that he sold a different variety of the product for the year involved (*Bowles* v. *Chamberlain,* 65 F.Supp. 245), and that he had a ceiling price different than other manufacturers (*Bowles* v. *Leventhal,* 61 F.Supp. 144). These rules are in harmony with the general principle that the burden of proof rests upon the one who is in a superior position to bear it. (31 C.J.S., Evidence, § 113.)

Obviously the seller was in a superior position to prove what his practices were before the advent of price regulation. Apparently in the instant case the defendant seller attempted to prove that factor and the plaintiff buyer agreed that he should but the court erroneously refused to permit it.

It is asserted that the plaintiff purchased the car for use in her business and thus the sale was excepted from the price regulation. I am satisfied with the discussion of that subject in the decision of the District Court of Appeal in this case which held the evidence was insufficient to establish that defense. (*Heesy* v. *Vaughn* (Cal.App), 183 P.2d 942.)

The majority opinion holds that the buyer's (plaintiff's) sole theory for recovery was that the sale was for cash and not on a conditional sale contract, and that she cannot now

change her position. The obvious answer to that holding is that the seller-defendant squarely put the conditional sale contract in issue and relied thereon, and, as seen from the foregoing discussion, the case made thereon was a prima facie violation of the price control law. In other words, defendant proved plaintiff's case, thus he could not be injured by any alleged change of theory on the part of plaintiff. It is difficult to see how that argument justifies a holding that plaintiff is bound by her theory of the case, when such a holding will permit defendant to evade the provisions of the price control act and result in a miscarriage of justice.

For the foregoing reasons I would reverse the judgment and remand the cause for a new trial.