[S. F. No. 12560. In Bank.—January 29, 1932.]

J. C. ISENBERG et al., Appellants, v. GEORGE SHERMAN et al., Respondents.

John Francis Neylan, Sullivan & Sullivan, Theo. J. Roche, Bartley C. Crum and Barry Ulrich for Appellants.

Oscar Sutro, W. H. Lawrence, Pillsbury, Madison & Sutro, Alfred Sutro and Eugene M. Prince for Respondents.

THE COURT.—Appellants, after an adverse final determination by this court of the above-entitled case, have

petitioned to recall the *remittitur* on the ground that ''the order of judgment was improvidently granted under false suggestions and under a mistake as to the facts of the case, practiced upon the Supreme Court of the State of California in procuring its judgment and upon the counsel representing the appellants herein''. The appeal on the merits was decided April 30, 1931. (212 Cal. 454 [298 Pac. 1004].) Appellants petitioned for a rehearing, which was denied with opinion on May 28, 1931. (212 Cal. 507 [299 Pac. 528].) On June 1st the *remittitur* issued to the county clerk. On August 26th appellants filed this motion.

Appellants contend that the judgment of this court was improvidently granted by reason of a mistaken idea as to the facts of the case; that such mistaken idea was caused by certain false suggestions in the briefs of opposing counsel; that the respondents had the evidence as to the true facts, but failed to produce the same. The whole controversy centers upon the question as to whether the Alien Property Custodian, acting pursuant to the provisions of the Trading with the Enemy Act, lawfully seized 185 shares of common stock in H. Hackfeld & Company, Limited, belonging to J. F. Pflueger, before July 19, 1918, the date on which such shares were voted by the custodian's representative at the stockholders' meeting, at which the assets of the Hackfeld firm were sold to American Factors, Limited. If such shares were not seized before that date, the custodian had no power to vote the same. Petitioners herein have filed various affidavits in support of the motion, and have attached thereto as exhibits photostatic copies of certain records found in the files of the Alien Property Custodian. One such exhibit is a *formal demand* for the 185 shares in question, dated December 9, 1918, and served on H. Hackfeld & Company, Limited, in Honolulu, on January 22, 1919. Other exhibits include photostats of certain letters, the authenticity of which is not disputed, which indicate that some of the respondents had actual knowledge long before the trial of this case that the custodian had some doubt as to the legal status of this stock, and that the formal demand had been issued and served on the dates above mentioned. Petitioners contend that respondents failed to produce this evidence and, in addition, attempted to mislead this court by certain statements in

their briefs to the effect that formal demands had in fact been issued before July 19, 1918.

We are of the opinion, assuming that no formal demand was made for the 185 shares in question until December, 1918, that petitioners have failed to present a case which would warrant the recalling the *remittitur*. The point now raised was fully considered by this court on the petition for rehearing and decided adversely to petitioners, and the present proceeding is an attempt to secure a second rehearing on the merits of that contention.

■ There can be no doubt that, in a proper case, this court has power to recall a *remittitur*. Under ordinary circumstances, it loses jurisdiction of a cause when the *remittitur* has been sent to and filed in the court below. This is so because the purpose of the *remittitur* is to return to the court below the cause which has been brought up on appeal, and when the *remittitur* has been duly filed in the court below, the cause is pending in that court, and not in this court. Stated in another way, this court has no appellate jurisdiction over its own judgments and it cannot review or modify them after the cause has once passed from its control by the issuance of the *remittitur*. (*Leese* v. *Clark*, 20 Cal. 388, 417.) However, that rule has no application to a situation where the judgment of this court and the consequent sending down of the *remittitur* has been secured by fraud or imposition, or where the court has been led astray so as to decide the case under a misapprehension as to the true facts. If such be shown to be the case, this court may recall the *remittitur*. The theory upon which this power is exercised is not that the court, in this manner, resumes jurisdiction over a cause, but that the court has never lost jurisdiction, because an order secured by fraud and false suggestion is a nullity and cannot be deemed to be the order of the court. It therefore follows that in such a case the court has never lost jurisdiction. The case of *Trumpler* v. *Trumpler*, 123 Cal. 248 [55 Pac. 1008], discusses the principles involved at some length. At page 252, it is stated:

"The general principles governing the jurisdiction of this court over a case which has been here, after the issuance of *remittitur*, and the power of the court to recall a

*remittitur*, have been well settled. They were first elaborately stated in the case of *Rowland* v. *Kreyenhagen*, 24 Cal. 52. In that case, the court, having stated that as a general rule this court cannot exercise any jurisdiction over a case in which a *remittitur* has been issued by its order and filed in the court below, say as follows: 'But this general rule rests upon the supposition that all of the proceedings have been regular, and that no fraud or imposition has been practiced upon the court or the opposite party; for if it appears that such has been the case, the appellate court will assert its jurisdiction and recall the case. Against an order of judgment improvidently granted, upon a false suggestion, or under a mistake as to the facts of the case, this court will afford relief after the adjournment of the term; and will, if necessary, recall a *remittitur* and stay proceedings in the court below. This is not done, however, upon the principle of resumption of jurisdiction, but upon the ground that the jurisdiction of the court cannot be divested by an irregular or improvident order. In contemplation of law, an order obtained upon a false suggestion is not the order of the court, and may be treated as a nullity. If, under color of such an order, the proceedings have in part found their way back to the court below, yet in law they are considered as still pending in the appellate court, and that court may take such steps as may be necessary to make the fact and law agree. These views are fully sustained by the numerous authorities cited on the argument by counsel for appellant.' . . . The same rule has been declared in *Hanson* v. *McCue*, 43 Cal. 178; *Bernal* v. *Wade*, 46 Cal. 640; *Holloway* v. *Galliac*, 49 Cal. 149; *People* v. *McDermott*, 97 Cal. 249 [32 Pac. 7]; *In re Levinson*, 108 Cal. 450 [41 Pac. 483, 42 Pac. 479].''

█ The present application does not come within the limits of the rule, for the reason that this court was not misled, nor did it decide the cause under any misapprehension as to the facts. The present application is an attempt to secure a determination on its merits of a point which this court intentionally refrained from discussing in its main opinion, for reasons that were clearly expressed in the opinion filed in denying the petition for rehearing. At that time, it was stated (212 Cal. 507 [299 Pac. 528]):

''As we understand petitioner's position, it is contended that 185 shares of the common stock of H. Hackfeld &

Company, Limited, belonging to one J. C. Pflueger, were never validly or lawfully seized by the alien property custodian. Based on this major premise, it is, therefore, contended that inasmuch as it was admittedly the Hawaiian law that a unanimous vote of all the stockholders was required to sell the assets of a solvent corporation, the resolution of July 19, 1918, must be deemed a nullity, for the reason that at that time Trent, as the representative of the custodian, voted the 185 shares alleged to belong to Pflueger, when, as a matter of fact, these shares were never seized by the custodian and still belong to Pflueger.

"A discussion of this point was intentionally omitted from the opinion for the reason that we then felt, and still feel, that it was not properly before us for consideration on its merits. The point cannot be considered on this appeal for the reason that it was never made in or presented to the trial court. The only point raised in the trial court in reference to the validity of the seizures was that all of the H. Hackfeld & Company, Limited, stock seized by the custodian had been illegally seized, because of the alleged invalidity of the demands. This point was fully and adequately discussed in the opinion, and, for the purposes of this petition, is admitted to have been decided correctly. Even this point, far from being, as petitioners urge, the 'essential feature' of their case, was only incidentally and incompletely presented to the trial court. It was only by a very liberal construction of the rule prohibiting the presentation of a new point or a new theory on appeal that we were able to consider the point in reference to the validity of the seizures at all."

We have not been convinced by any argument advanced by petitioners on the present motion as to the incorrectness of the views above expressed.

■ Moreover, we cannot possibly see how petitioners could have been injured by reason of the fact, assuming it to be a fact, that respondents failed to disclose that a formal demand had not been made for the 185 shares in question until December of 1918. If that evidence had been introduced, the trial court could not possibly have reached a different conclusion from that it did reach without such evidence. There seems to be no dispute but that on January 5, 1918, H. Hackfeld & Company, Limited, made

an official report to the alien property custodian, which report clearly indicated that the 185 shares of common stock owned by J. C. Pflueger were enemy owned. This report is defendants' exhibit No. 359. In that exhibit, as reprinted in appellants' supplemental opening brief, the execution date is shown as February 5, 1918, but respondents have pointed out, and appellants tacitly admit, and an examination of the copy introduced in evidence convinces us that the true date is January 5, 1918. It is an admitted fact that this report was received by the custodian in Washington prior to January 29, 1918. (Respondents contend that appellants do not deny that it was so received January 19, 1918.) There is no dispute that on January 29, 1918, certain shares of stock were transferred to the name of the custodian and that within this transfer the 185 shares in question were included. In the main opinion, it was held that all that was required for a valid seizure of enemy-owned stock was a determination of enemy status and physical possession. It was held that when these two elements were shown to exist, defects in demands, if any existed, were wholly immaterial. It was pointed out that all of the stock delivered to the custodian on January 29, 1918 (including the J. C. Pflueger stock) was in fact enemy owned within the meaning of the Trading with the Enemy Act, and, as such, was clearly subject to seizure; that such stock could be seized only after a determination of enemy status; that under the authorities cited in the opinion such a determination could be made upon information gained from such a report as defendants' exhibit No. 359. The court then considered the question as to whether a *valid demand* was a condition precedent to seizure and held that it was not. At page 499, it was stated:

"The next contentions of appellants proceed upon the theory that the only way stock could be seized, after there had been a valid determination of enemy status, was by proper demands. Based upon this hypothesis, appellants argue that the demands in this case were not proper because they did not describe specific property, and because they were not served on the proper party. Both of these contentions are, in our opinion, erroneous, but before discussing them we think it well to state that appellants have thus proceeded upon an incorrect interpretation of the Trading

with the Enemy Act. We do not believe that a 'proper demand' was a condition precedent in all cases to a valid seizure of intangibles, under the provisions of the act. In our opinion, the act does not prescribe the mode of seizure. (*Garvan* v. *Marconi Wireless Tel. Co.*, 275 Fed. 486.) As we read the act, it provided but one condition precedent to a valid seizure, namely, an executive determination of enemy status, which we have already held, existed in this case. It must be remembered that the Trading with the Enemy Act was an emergency war measure. In *Commercial Trust Co.* v. *Miller*, 262 U. S. 51, at page 53 [67 L. Ed. 858, 43 Sup. Ct. Rep. 486, 487], the Supreme Court stated that the act 'was an exercise of governmental power in the emergency of war and its procedure is accommodated to and made adequate to its purpose.' In *Lizrodt* v. *Miller*, 17 Fed. (2d) 533, it was stated that 'The purpose of the act was to reduce to possession all accessible enemy property, not only to cripple Germany, but to prosecute the war.' As we read the act, it seems obvious that its primary purpose was to place enemy owned or controlled property in the hands of the custodian. The service of a proper demand was one way to accomplish this result, the demand acting as a symbolic seizure. Such a symbolic seizure, however, was not the only way in which the custodian could get possession. The purpose of any seizure—whether actual or symbolic—was to get possession. Primarily seizure means the taking of physical possession. As was said in *Miller* v. *Rouse*, 276 Fed. 715, at 717, 'Normally, capture is seizure, and seizure is an act of forcible taking.' There is a material difference between an actual taking, which existed here, and a symbolic taking accomplished by a demand.

"The act itself recognized, in addition to a symbolic taking or capture, predicated on a proper demand, that a taking could be accomplished by a physical seizure—by force and arms, if necessary. 'And it (the power of the custodian) may be exercised by forcible seizure of the property or by suit.' (*Commercial Trust Co.* v. *Miller*, 262 U. S. 51, 53 [67 L. Ed. 858, 43 Sup. Ct. Rep. 486, 487].) The statute creating the custodian enables him to capture enemy property with a sergeant and file, or otherwise *vi et armis*. He may also file a libel of possession, or he may sue in other ways. . . . He can use his own method of procedure. . . . '

(Concurring opinion in *Amer. Ex. Nat. Bank* v. *Garvan*, 273 Fed. 43, at p. 48.) It is obvious, therefore, that if the custodian in this case had forcibly taken possession of the property involved, he unquestionably would have acquired good title to it. Certainly the peaceful taking shown by the record herein should be no less effective.

"Whatever rights the custodian had in seized property originated in and were dependent upon possession—possession gained by means of an actual or symbolic seizure. Once the property was seized, the custodian exercised rights of absolute ownership over it. (*Com. Trust Co.* v. *Miller*, 262 U. S. 51 [67 L. Ed. 858, 43 Sup. Ct. Rep. 486]; *Munich Reinsurance Co.* v. *First Reinsurance Co.*, 300 Fed. 345, aff. 6 Fed. (2d) 742, 751; *Junkers* v. *Chemical Foundation, Inc.*, 287 Fed. 597.)

"Every case cited by appellants is distinguishable from the case at bar on the fundamental ground that in the cases cited, including *Isenberg* v. *Trent Trust Co.*, 26 Fed. (2d) 609, *supra*, the custodian seized property to which he was not legally entitled, while, in the instant case, every share seized was enemy owned and properly the subject of seizure. The purpose of the various procedures open to the custodian was to achieve a seizure or its equivalent. In this case, the custodian attained his end peaceably, instead of by force, as he could have. He got possession, to which he was legally entitled, and, therefore, defects in demands, if they did exist, are immaterial, since demands are only symbolic of what actually took place here, namely, physical seizure. Once it is shown that there was a valid determination of enemy status, and that the custodian got possession of only that to which he was entitled, defects in formal demands, are of no importance. It follows that in so far as appellants' argument proceeds upon the theory that the demands were insufficient because they did not describe specific property and because they were not properly served, they are without merit. The legal sufficiency of the demands, in our opinion, is not an issue in this case."

If that portion of the opinion correctly states the law, and for the purposes of this motion it must be conceded that it does, then it follows that, since the custodian could and did make a valid determination that J. C. Pflueger was an enemy within the meaning of the Trading with the Enemy

Act, and did receive physical possession of the 185 shares owned by him, defects in formal demands are entirely immaterial. A lawful seizure was consummated on January 29, 1918, and the fact (if such be the fact) that no formal demand had then been made for the stock is entirely immaterial. Petitioners refer to certain passages in the briefs of respondents, in which it is stated that demands were made for this stock before July of 1918, and contend that the photostatic copies of documents filed with this motion conclusively show that no such demand was made until December of 1918. It is contended that the court was misled by these alleged erroneous statements. This court could not possibly have been misled by any such statements, for the reason that we held that "the legal sufficiency of the demands, in our opinion, is not an issue in this case".

Appellants seek to avoid the logic of the above reasoning on the ground that, although defendants' exhibit No. 359 does show all of the above facts, counsel for defendants introduced the document only for a limited purpose and that there is, therefore, nothing in the record to show that the custodian had knowledge of the enemy status of J. C. Pflueger on January 29, 1918, when the stock was seized, because this court can consider the document only for the purpose mentioned at the time that the document was introduced. It appears from an examination of the transcript that when respondents' counsel introduced exhibit No. 359 he stated that he did so for the purpose of showing that the custodian had reason to believe that J. F. Hackfeld was a German national. The exhibit does show that information. Petitioners contend that, since the document was offered for that specific purpose, it cannot be considered for any other purpose, and particularly cannot be used to show that the custodian had knowledge of the enemy status of J. C. Pflueger and of his ownership of the 185 shares, although that information appears as clearly on the document, which was admittedly in the custodian's possession, as the information in reference to Hackfeld. Appellants' contention is tantamount to stating that, although the document admittedly shows the required information in reference to Pflueger and was admittedly in the possession of the custodian, because counsel stated a limited purpose in introducing it, this court must assume that the custodian had

the document only for the purpose for which it was offered in evidence, and, therefore, did not have the information which it clearly appears from the face of the document that he did have. To state the proposition is to refute it. Such a contention has no merit, particularly in a case such as the one at bar, where the whole issue of the validity of the seizures was at best but incidentally presented to the trial court. The rule in this jurisdiction is well settled that counsel are not estopped from drawing any reasonable deduction from evidence offered, although counsel stated a limited purpose in offering it. In *Sill* v. *Reese*, 47 Cal. 294, at page 340, it is stated: "Indeed, counsel has no power to limit the effect of evidence: . . . the statement of a 'purpose' is only a reason, addressed to the court, why the particular evidence should be admitted. . . . " (See, also, 10 Cal. Jur. 817.)

We have discussed the merits of the points raised by petitioners at some length. We have not done so with the intent of deciding those points on their merits, because on this proceeding we have no power so to do. This is so, because, having determined not to recall the *remittitur*, this court has no power now to decide any question in reference to the merits of this controversy. Since the *remittitur* is not to be recalled, this case must be treated as having been determined finally and no longer within the jurisdiction of this court. The only purpose of discussing the merits is to show that the alleged misstatements and alleged suppression of evidence were all directed to an immaterial matter. If the evidence that petitioners complain was not introduced had been introduced, it could not possibly have affected the judgment of this court, under the interpretation given by it, in its main opinion, to the Trading with the Enemy Act.

The motion to recall the *remittitur* is denied.

Mr. Justice Preston, deeming himself disqualified, does not participate in the foregoing.