[Civ. No. 12338.   First Dist., Div. One.   June 25, 1943.]

ANNIE ELLENBERGER, Appellant, v. THE CITY OF OAKLAND et al., Respondents.

338

[illegible]

A. D. Ericksen, Johnson & Harmon and William H. Henderson for Appellant.

F. Bert Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondents.

WARD, J.—This appeal is taken from an order denying appellant's petition for a writ of mandate to compel the Board of Trustees of the Police Relief and Pension Fund of the City of Oakland to grant her a pension amounting to one-

half of the salary of her deceased husband as a policeman of the municipality.

The amended petition alleges that prior to January 6, 1932 George Ellenberger was in perfect health; that on that date "while in performance of his duty as such policeman, said George Ellenberger, while stepping on the running board, slipped between the patrol wagon and another car, twisted his neck and struck his head against the side of the patrol wagon; that immediately thereafter said George Ellenberger felt a severe pain in the neck and later nausea and dizziness and he lost consciousness; that he suffered a cerebral hemmorrhage, injury to muscles and nerves of the head and neck, cerebral lesion and shock;" that subsequent to the accident Ellenberger showed a steady deterioration in health which, as alleged, was traceable to the injuries suffered in 1932.

There is no dispute that a stroke in 1939 caused death, or that there was a decline in Ellenberger's health from 1932 to 1939; also there is evidence that he suffered a fall in 1932 during the performance of his police duties, but whether this fall brought about a stroke or whether a stroke caused the fall, or whether the first attack contributed to the second, are the particular questions which were presented to the trial court.

█ Appellant presents the first contention in the following form: "There is no substantial evidence supporting the court's findings that George Ellenberger did not fall on January 6, 1932, and strike his head while in the performance of his duties as policeman causing injuries directly resulting in his death on July 28, 1939." It is immaterial whether there is substantial evidence to support such a finding, though the evidence indicates justification for such a conclusion. The rule is that the burden of proof is upon the party presenting the affirmative of the issue. (Code Civ. Proc., sec. 1981; *Montgomery* v. *Board of Admin.*, 34 Cal.App.2d 514 [93 P.2d 1046, 94 P.2d 610].) If there is no evidence upon an an issue, the finding should be against the party who has the burden of proof. This case does not even present a situation where if a prima facie case is presented, the burden of proof shifts to the opposing litigant. █ There is an entire absence of evidence as the record now stands, showing a causative connection between the occurrence of 1932 and the demise of Ellenberger in 1939; a conclusion to that effect must rest

on nothing but conjecture. Neither the trial nor a reviewing court is permitted to surmise that there has been an attempt on the part of the board to illegally deprive the widow of a deceased officer of a pension. Omitting for the moment certain medical reports which will be considered later, the evidence as a matter of law does not require a finding that the fall of 1932 caused any stroke which the deceased may have suffered. In this respect the case is to be distinguished from *Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714] and *Brant* v. *Retirement Board of S. F.*, 57 Cal.App.2d 721 [135 P.2d 396]. In both these cases this court held that the uncontradicted evidence showed the receipt of an injury in the course of the employment and a causal relation between such injury and the death.

Up to this point the appeal has been viewed solely upon the record as it stands. The difficulty, if any, in the present appeal arises from the fact that certain medical reports were offered in evidence, to which objections were sustained, and that these were not all marked as exhibits, although two were so marked. Subsequently the trial court stated: "These reports may be considered for what they are worth." Assuming the possibility that the trial court intended to mark them as exhibits, and since the transcript is prefaced with the statement that the "exhibits [medical reports] were added to reporter's transcript by stipulation of respective counsel on settlement of transcript," in the interest of justice we have considered them.

Most of the reports indicate Ellenberger's physical decline from 1932 to the date of his death in 1939. The only statement, or part thereof, called to our attention in support of a theory that the 1932 accident, spell, stroke or fall was responsible for the affliction in 1939, appears in a report of a Dr. Warren B. Allen, who examined Ellenberger in 1932 and 1939, which is as follows: "It will probably be necessary to assume that the patient had a slight head injury on January 6, 1932, with little or no concussion, but which was followed by an edema of the brain which accounted for his delayed vomiting and unconsciousness. The microscopic findings in the cerebral spinal fluid would indicate a previous mild inflammatory disease of the meninges suggesting a chronic arachnoiditis (see lab. report) pre-existing and activated by the trauma." The report of Dr. Allen further stated that he did

not feel that the injury sustained in 1932 "contributes or is responsible for his present disability" and "is not in any way industrial." Considering all of the hospital and medical reports as part of the record, there is no evidence that the condition which resulted in death was connected with the "fall" sustained in 1932. The reports are all based upon a statement by Ellenberger that he was stepping from an ambulance to a patrol wagon when he slipped "striking his head and straining his neck." This evidence, if admissible, does not require a finding as a matter of law that the fall caused a stroke suffered then, nor a subsequent one.

When it appeared that the court intended to render judgment for respondent, and that it did not deem the medical reports, if admissible, sufficiently substantial to warrant any other decision, petitioner's counsel asked for a continuance "until we can get a doctor . . . to prove these facts that are not satisfactory to the court." Counsel for petitioner did not state the name of the doctor they wished to call, nor the particular, or any, point petitioner hoped to prove. Petitioner's counsel knew or should have known the contents of the medical reports. The sequence of causation from the date of the first trouble in 1932—the main question in the case—required expert evidence. The record does not disclose that any preparation was made to call any of such witnesses, whose testimony would be necessary to prove petitioner's theory. It is incumbent upon a party to be prepared to prove affirmative allegations (Code Civ. Proc., secs. 1869, 1981) or to make a sufficient showing why witnesses were not subpoenaed. Failure to produce necessary evidence places the trier of the facts in a position where the evidence introduced should be viewed with distrust. (Code Civ. Proc., sec. 2061, subd. 6, 7.)

The third assignment of error is that the court erred in ruling inadmissible the testimony of a police officer that immediately after his fall in 1932 Ellenberger stated that he slipped and fell. Assuming that the statement was part of the res gestae, and there is authority for such assumption (*Showalter* v. *Western Pacific R. R. Co.*, 16 Cal.2d 460 [106 P.2d 895]), it does not appear that petitioner was prejudiced by the ruling. There is evidence that Ellenberger had fallen between the two cars to the floor of a garage, and this is borne out by the condition of his uniform, which was covered with dirt and grease. In addition the hospital reports, which were

considered by the court, referred to Ellenberger as having "slipped, striking his head and straining his neck." The trial court found in accordance with appellant's position that decedent "slipped . . . twisted his neck and struck his head against the side of the patrol wagon." A statement by the police officer, had it been admitted, would not have determined whether a stroke caused the fall or the fall caused the stroke.

Appellant objects to certain findings as contradictory. Any inconsistency is unimportant. An examination of the findings discloses without conflict that decedent died as a result of natural causes.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.