[Civ. No. 12338. First Dist., Div. One. Nov. 19, 1946.]

ANNIE ELLENBERGER, Appellant, v. CITY OF OAKLAND et al., Respondents.

Annie Ellenberger in pro. per., A. D. Ericksen, Johnson & Harmon and William H. Henderson for Appellant.

F. B. Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondents.

PETERS, P. J.—Petitioner, Annie Ellenberger, has filed in this court *in propria persona* a document entitled "A motion to set aside the judgment on the grounds of error, fraud or mistake." In addition to requesting various types of relief which this court has no power to grant, the petitioner requests that a judgment affirmed by this court in June of 1943 (*Ellenberger* v. *City of Oakland*, 59 Cal.App.2d 337 [139 P.2d 67]), and in which the remittitur was issued on August 25, 1943, be set aside and the issues therein decided be relitigated. Although the petition is quite inexpertly drawn, and is gravely deficient in its allegations, this court has determined to treat the petition as one to recall the remittitur.

Normally, of course, an appellate court loses jurisdiction of a cause when the remittitur has been filed in the court below. An appellate court has no appellate jurisdiction over its own judgments, and it cannot review or modify them after the cause has passed from its control by the issuance of the remittitur. However, where the judgment of the appellate court has been secured by fraud or imposition practiced on it, such court may recall the remittitur. The theory upon which this is done is that an order secured by such fraud is a nullity, and that such an order does not deprive the court of jurisdiction. (See *Isenberg* v. *Sherman*, 214 Cal. 722 [7 P.2d 1006]; *Talbot* v. *Fire etc. Pension Bd.*, 51 Cal.App.2d 193 [124 P.2d 352]; *Haydel* v. *Morton*, 28 Cal.App.2d 383 [82 P.2d 623]; see discussion 2 Cal.Jur. p. 1068, § 634; 1 Cal. Jur. 10-Yr.Supp. p. 662, § 634; 23 Cal.L.Rev. 354.) But this power is only exercised where such fraud or imposition appears clearly, and where the claimed fraudulent acts, if proved, would have resulted in a different judgment. There

must be an end to litigation, and that end normally occurs when the remittitur issues.

A reading of the present petition discloses that it falls far short of alleging facts showing either due diligence on the part of petitioner or a sound legal reason why the remittitur should be recalled. The petition is so gravely deficient that this court would have been warranted in denying from the bench the requested relief without an opinion, but, because petitioner is unrepresented by counsel, and out of an abundance of caution, and in order to ascertain whether there has been a miscarriage of justice, this court has examined the entire record of the original appeal as well as all documents and exhibits submitted in this proceeding. After such examination it is our opinion that petitioner has failed to present a case entitling her to the relief requested.

■ The petitioner charges various attorneys and public officials with committing acts which, even if true, have no relation to the case before us. This is a proceeding to recall the remittitur in the case of *Ellenberger* v. *City of Oakland,* 59 Cal.App.2d 337 [139 P.2d 67]. Our power is to determine whether the judgment in that case was secured in this court as the result of fraud or imposition. This is not a court of original trial jurisdiction. We have no power in this proceeding to decide other controversies that may exist between petitioner and her attorneys, or the city of Oakland or its officials. Thus it is important to keep in mind just what was involved in the case of *Ellenberger* v. *City of Oakland, supra.*

Petitioner is the surviving wife of George Ellenberger who was a member of the Oakland Police Department and who died in 1939 of a stroke. The wife petitioned the Pension Board for a pension, it being her contention that her husband had been injured in the course of his employment in January, 1932, and that the 1939 death resulted from, or was contributed to, the 1932 injury. The board denied her a pension, whereupon she petitioned the Superior Court of Alameda County for a writ of mandate to compel the board to issue her a pension. The trial court took evidence and denied the writ of mandate. Petitioner thereupon appealed to this court. This court unanimously affirmed the lower court. No petition for rehearing was filed herein, nor was a petition for hearing in the Supreme Court filed. The remittitur issued from this court August 25, 1943. No complaint of any kind

was filed in this court until the present petition to recall that remittitur was filed on June 22, 1946.

It is quite clear that before the board and the trial court the petitioner, in order to prevail, had to prove several things by a preponderance of the evidence—first, that the fall of 1932 was caused by the employment, that is, that such fall caused a stroke, and that a stroke, nonindustrial in nature, did not cause the fall; and secondly, that the 1939 stroke was contributed to by the 1932 fall. She offered but little evidence on these points and contrary evidence was introduced, both before the board and the trial court. When the case was appealed to this court the burden of petitioner was much greater. In order to prevail here it was incumbent upon her to show not only that she had introduced credible evidence on the basic issues, but that there was no credible or substantial evidence opposed to her evidence that would support the findings adverse to her. In other words, it was incumbent upon her to show that the uncontradicted evidence demonstrated the receipt of an injury in the course of the employment, and a causal connection between such injury and death. (*Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714] ; *Brant* v. *Retirement Board of S. F.*, 57 Cal.App. 2d 721 [135 P.2d 396] ; *Dornell* v. *Retirement Board,* 72 Cal. App.2d 197 [164 P.2d 266].) This court reviewed the record with these rules in mind. In so doing it not only considered all of the evidence, including all the exhibits admitted into evidence, but also considered a considerable number of exhibits that were offered by petitioner and at first excluded and then only inferentially admitted. This court found that while petitioner had demonstrated that her husband's health had declined in the period 1932-1939, she had failed to prove the other basic elements of her case. To say the least, the evidence as to whether the 1932 fall was industrial, and whether there was any causation between the 1932 fall and the 1939 stroke, was conflicting. There was ample, competent, credible and substantial evidence of qualified doctors that the 1932 fall had nothing to do with the 1939 stroke. That being so, this court could do nothing but affirm the judgment.

In the present proceeding the petitioner complains at length about her failure to receive industrial accident benefits, about the failure of the city officials to file a petition with the Industrial Accident Commission, about the lack of, or unscientific, care given her husband after his injury, about

the failure of the city of Oakland to pay her husband's medical expenses from 1932 to 1939, of the failure of the city to pension her husband between 1932-1939, and the compelling him to work during that period, for performing an allegedly illegal autopsy on her husband's body, etc., etc. In connection with these matters she charges that all connected with them, including her attorney, the courts, and the public officials were guilty of fraud. These matters have no relevancy at all in the present proceeding. Even if there were irregularities or even fraud in connection with any of these matters (a point we, of course, do not decide) it could have no effect at all upon the present proceeding, all of such matters being completely outside the issues here involved.

Certain allegations in the petition do directly relate to the present proceeding. Thus it is averred that the original reporter's transcript filed in this court was not accurate and was changed in several places. The transcript is properly certified by the trial judge as being accurate and complete. The petition lists several of these alleged inaccuracies. Nowhere is it alleged, or could it be alleged, that even if such minor changes were made in the transcript that it would in any way have affected the disposition of the appeal. A reading of the entire record, including the matters alleged to have been omitted or changed, demonstrates that the charged irregularities were all inconsequential.

It is also urged that this court committed an "improvident error" in preparing the opinion. This contention is based on the following facts: On the appeal the appellant urged that the trial court had abused its discretion in refusing appellant a continuance. This court properly held that petitioner's showing on this point fell far short of demonstrating, as a matter of law, an abuse of discretion. In discussing the point this court stated (p. 341) : "Counsel for petitioner did not state the name of the doctor they wished to call, nor the particular, or any, point petitioner hoped to prove." Petitioner contends that this is an erroneous statement of fact, and refers to the reporter's transcript pages 56-60. A reading of that portion of the record demonstrates that the statement in the opinion was substantially correct. At page 58 of the transcript petitioner's then counsel spoke of wanting the reports of several doctors, but she did not state

that she wanted the oral testimony of any of these doctors, with the exception of Dr. Hamlin. She did not state what she expected to prove by the reports or testimony. In her present petition she sets out several letters and medical reports from the doctors referred to, but none from Dr. Hamlin. Thus it does not appear what petitioner, during the trial or now, expected or expects to prove by the testimony or report of Dr. Hamlin. In her present petition it would appear that she is now contending that she wants the testimony of Doctors Steinmetz and Dougherty, who were her husband's personal physicians during 1932-1939. No such request was ever made by her counsel at the time the continuance was requested, and these doctors, although attending physicians, were not called by her.

It should also be noted that on the appeal the continuance issue was fully argued, and that in her brief petitioner attempted to support her argument thereon as she does in the present proceeding by the portions of the record above noted. The point was fully discussed and passed upon. It cannot now be relitigated. Petitioner did not see fit to challenge the opinion by petition for rehearing or hearing. Those were her proper remedies.

■ The balance of the petition in the present proceeding charges, in vague, general, uncertain and incomplete terms, that various frauds have been practiced upon her. The pleading is wholly insufficient. It is, of course, not sufficient to plead fraud in general terms—it must be specifically alleged. (See cases collected 12 Cal.Jur. p. 800, et seq. § 62, et seq.) From these vague and uncertain allegations it would appear that petitioner charges that her original petition in the trial court was fraudulently altered without her knowledge and consent by the removal of Paragraph X thereof. That paragraph apparently referred to the fact that an autopsy and coroner's inquest had been held on her husband. This paragraph was stricken by the Presiding Judge after a formal motion to strike. The record of the proceedings on that motion is not before this court, but apparently the motion was granted because the allegations were evidentiary in character. Just how the striking of the allegation in question injured petitioner does not appear. Regardless of the order, the documents referred to in the stricken paragraph could have been offered in evidence at the trial. The record shows that no such offer was made.

■ Petitioner also contends that her attorney at the trial, acting in collusion with the city attorney's office, suppressed certain evidence. Other than the bare allegation no supporting facts are set forth. She merely charges that her attorney did not introduce the death certificate of her husband or the verdict of the coroner's jury. From the certified copy of the death certificate furnished this court on the present proceeding it appears that that document recites that death was caused by various types of heart disease, and by an accident occurring in August, 1932, in a public place when the decedent had slipped and fell and struck his head. The coroner's jury found the death to have been accidental. While these documents undoubtedly, if properly authenticated, would have been admissible, they, of course, would not have been conclusive. These reports could not possibly have proved that the January, 1932, fall was not the result of a stroke, which was one of the basic points involved. The various medical reports that were introduced demonstrated almost to a certainty that the decedent was suffering from a progressive heart disease and other complications, nonindustrial in nature. •The mere charge that certain evidence that was available and not introduced was ''suppressed'' by her counsel at the trial is not sufficient to require a court to recall its remittitur where the allegedly ''suppressed'' evidence could not have affected the result. ■ Moreover, these documents were both public records of which the courts could take judicial notice. Just how these public records were ''suppressed'' or could be ''suppressed'' does not appear from the petition. It is quite significant that, although the record shows that petitioner was represented by several lawyers on her appeal (these lawyers being different from the lawyer who appeared at the trial), they made no charge of suppression on the appeal.

Very general and unsupported charges are made that the various doctors' reports which support the decision were false. These reports were offered in evidence by petitioner at the trial. Petitioner contends that these reports are contrary to certain letters and reports written by the same doctors, and which letters and reports she now offers in support of her contention. A reading of these documents demonstrates that they do not contain contradictory opinions. The record shows that these doctors attempted in every reasonable way to try to find that this man's illness was industrial. After

careful and complete diagnosis they finally became convinced that it was not.

Another factor should be mentioned. While a remittitur will be recalled in certain unusual cases, it is a fundamental rule that the motion must be promptly made, and that unexplained delay is itself sufficient to deny the relief. (*Talbot* v. *Fire etc. Pension Bd.*, 51 Cal.App.2d 193 [124 P.2d 352]; *Gutelius* v. *General Electric Co.*, 39 Cal.App.2d 292 [102 P.2d 1108].) In the petition here under consideration there is no explanation at all as to why a petition for rehearing was not filed, as to why a petition for hearing in the Supreme Court was not filed, or why petitioner has waited nearly three years to request relief, or as to the time or circumstances under which she is supposed to have discovered the alleged fraud. This renders the petition fatally defective.

After considering the entire record here presented, we are convinced that this is simply a case in which the petitioner failed to prove her case before the board or the trial court, where she lost her appeal, and where she now seeks to relitigate the issues decided against her in the belief that the original decision was wrong. A remittitur may not be recalled on such a ground.

The petition to recall the remittitur is denied.

Ward, J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1947.