[Civ. No. 14046.   First Dist., Div. One.   Mar. 23, 1949.]

ANNIE ELLENBERGER, Appellant, v. GOVERNOR EARL WARREN, as Chief Executive Officer, et al., Respondents.

Annie Ellenberger, in pro. per., for Appellant.

Fred N. Howser, Attorney General, Leonard M. Friedman, Deputy Attorney General, J. F. Coakley, District Attorney, R. Robert Hunter, Assistant District Attorney, John W. Collier, City Attorney, Archer Bowden, Assistant City Attorney, J. Paul St. Sure, Edward Moore, Robert L. Lamb, Robert A. Haughwout and Richard H. Klippert for Respondents.

BRAY, J.—Appeal by petitioner from a judgment in favor of all defendants after order sustaining their demurrers to petitioner's petition without leave to amend. The petition was filed and the appeal brought by petitioner in propria persona.

On June 17, 1948, petitioner filed in the trial court a "Petition for Writ of Mandate, Petition to Clear the Records, Conspiracy to Violate Civil Rights, Damages," against Governor Earl Warren and a large group of defendants. (Their names will be given later when we consider the allegations concerning them.) All defendants demurred to the petition, both generally and by setting up various sections of the statutes of limitation. The court sustained these demurrers without leave to amend. The action arises out of the extended efforts of petitioner, the widow of a former police officer of the city of Oakland, to obtain a pension of half of her deceased husband's salary. He was injured on January 6, 1932, and died July 28, 1939. In October, 1940, the Board of Trustees of the Police Relief and Pension Fund denied petitioner's claim for a widow's pension, based on their finding that her husband's injury was not incurred in the line of duty. In April, 1942, petitioner petitioned for a writ of mandate to compel the board to grant her a pension. This petition was denied by the superior court and its action affirmed by this court in June of 1943. (*Ellenberger* v. *City of Oakland,* 59 Cal.App.2d 337 [139 P.2d 67].) In November, 1946, this court denied a "motion to set aside the judgment on the grounds of error, fraud or mistake." (*Ellenberger* v. *City of Oakland,* 76 Cal.App.2d 828 [174 P.2d 461]; hearing by Supreme Court denied.) A comparison of those cases with ours shows that every main contention made here was considered there.

The 67-page petition is inexpertly drawn, charges fraud in general terms, and in many respects is vague and indefinite, both as to the legal grounds upon which it is brought and

the remedy sought against some of the defendants. We have diligently considered all of the contentions made by petitioner, as we have been able to understand them, and find that no cause of action has been stated against any defendant, and that had any cause of action existed, it would be barred by the statutes of limitation. Some of the charges made apply to an individual defendant alone, while other charges apply to a group. The prayer of the petition asks for a writ of mandate directed to all defendants commanding them to pay petitioner ''her pension'' from July 28, 1939, on, and $100,000 general damages for ''the harm, fraudulent deceit, infringement, negligence and the lack of law enforcement to the protection of plaintiff and family from January 6, 1932, to the present date.'' In addition, petitioner asks that the death records of the city of Oakland be corrected to show the alleged true cause of the husband's death.

Generally, the petition attempts to allege a conspiracy among the defendant officials of Alameda County and the city of Oakland, and the other defendants, to deprive petitioner of the pension which she claims should have been paid her from 1939 on, and their refusal to ''correct'' the records as petitioner requests. It alleges in great detail the circumstances of her husband's fall while on duty in 1932 as a police officer; the history of his illness from then on, until his death in 1939; his claimed neglect by the doctors who treated him, including the doctors who are defendants in this case, and also by the city of Oakland and some of its officials; the alleged violation of his civil rights; claimed changes in certain medical reports made during that period; claimed conflicting, false and fraudulent reports of the medical men; proceedings before the Oakland City Council to obtain disability allowances during her husband's lifetime; his claimed fraudulent removal from his home in Hayward to Providence Hospital for a brain operation which was never performed; the claimed mutilation of his body after death; the refusal of the legal departments of Oakland and Alameda County and the Police Department of Oakland to investigate petitioner's charges; a proceeding brought by petitioner in the Industrial Accident Commission for a death benefit and its claimed refusal to allow witnesses to testify for her and its alleged denial of her claim; proceedings before the Oakland pension board, where she was represented by attorneys selected for her by defendant Moorehead, secretary of the Heath Club,

which attorneys she claimed conspired to obstruct justice and did not properly represent her; the proceedings in the superior court and in this court before mentioned, where petitioner claims she was illegally refused justice; petitioner's appearance in June, 1944, before the Alameda County grand jury which refused to hear her witnesses, and another appearance in 1947 where again her witnesses were refused admittance to the hearing; the fact that although defendant Simpson, former foreman of the grand jury, claimed the case had been presented to the grand jury, there is no record of it in the county clerk's office, "and the hearings seem to be dishonest;" "That because the County of Alameda and the City of Oakland have employed officials and medical experts who have failed in their duty and conspired to violate the civil rights of plaintiff's family, plaintiff has suffered the loss and comfort of her husband, the widow's pension if the case was industrial, and suffered damage by anxiety, embarrassment and humiliation, that would not have occurred if the laws had been enforced by the defendants to protect the plaintiff from the illegal acts of officials and medical experts herein named. That the failure of the said Heath Club Secretary William Moorehead and Attorney Wade Snook to protect her legal interests before the statute of limitations had expired obstructed justice. . . . That your petitioner has demanded correction of the records that are now in conflict and requested records that would show the right of the City of Oakland to seize George Ellenberger, claim responsibility for an industrial injury said City claims occurred on January 6, 1932, but which they now claim was not industrial and are supported in this by the Courts."

We will now pass to the charges made against particular defendants in addition to the general charges above set forth.

### GOVERNOR EARL WARREN

It is difficult to determine just what cause of action is attempted to be alleged against defendant Warren. He is charged with having been a coworker while District Attorney of Alameda County with his successor district attorneys, defendants Hoyt and Coakley, with having in 1937 granted permission for the alleged fraudulent removal of her husband from his home, with having as district attorney and later as attorney general failed to advise petitioner and to investigate her charges of conspiracy to defraud, and as governor failing to compel the Alameda County district attorney's

office to bring to justice those guilty of conspiracy or to investigate the conspiracy himself, and "has seen fit to aid and abet the wrongful acts of District Attorney Ralph Hoyt by appointing him to a Judgeship while Ralph Hoyt was being investigated by the Alameda County Grand Jury for his failure to do his duty. That Attorney Charles Wade Snook was also under investigation by the Grand Jury just prior to his appointment as a Judge of the Superior Court of Alameda County by Governor Earl Warren. Both men had been involved in this case. That because of the wrongful use of political power plaintiff has suffered damage," and together with all defendants, Warren had "infringed upon her civil rights." It is also charged that Governor Warren "covered up the fraud by reorganizing the State of California Industrial Accident Commission." It is obvious that petitioner has alleged no duty which this court could compel the governor to perform, nor is there any way in which the governor could pay, or require any of the defendants to pay, a pension to petitioner.

## ALAMEDA COUNTY AND OFFICERS

In addition to the county of Alameda, petitioner joined as defendants the following officers of that county—Alameda County Board of Supervisors, Mark Emerson, M.D., County Coroner, John Reeves, M.D., Frank Coakley, District Attorney, H. L. Simpson, former foreman of the grand jury, Preston Snook, former foreman of the grand jury, Ralph Hoyt, former district attorney.

The pension to which petitioner claims she is entitled, if payable at all, would not be payable by the county of Alameda or any of the officers thereof. The specific charges against defendants Hoyt and Coakley seem to be for failure to obtain the pension for her, to prosecute those who she claims conspired against her, and to bring about a change in the Alameda County records so as to show that her husband's death resulted from an industrial injury.

Defendants Simpson and Preston Snook as former foremen of the grand jury are charged with not giving her a full hearing before the grand jury and with failure of the grand jury to grant the relief which she expects. Defendant Emerson as coroner apparently is charged with improperly stating the cause of death of petitioner's husband at the inquest held in 1939. The mere statement of the charges made against the county of Alameda and the above named defendants shows that no cause of action is stated.

## Gertrude Moore

An amended complaint was filed against defendant Gertrude Moore. It alleged, in addition to repeating practically all the allegations of the original complaint, that defendant Moore performed a spinal puncture on petitioner's husband in 1932. It is difficult to determine just what petitioner is attempting to allege, but apparently she means to charge that defendant Moore, by this spinal puncture, discovered or should have discovered a meningitis condition, which she failed to report; that defendant Moore conspired with the other doctors to "protect themselves by wrongful medical practice and procedure;" that after the husband's death, his body was mutilated by defendant Moore and the latter took specimens of certain of his organs "not to establish the true cause of death but [in] a desire for the scientific facts that had been of interest to" Dr. Moore and another doctor; that defendant Moore made false pathological and autopsy reports. These acts occurred in 1939. As to the attempted general charges of fraud and conspiracy, no cause of action thereon is stated against defendant Moore.

### Defendants City of Oakland and Its Officers

Included in the general conspiracy charges are the city of Oakland, John Hassler, City Manager, Robert Tracy, Chief of Police, John Collier, City Attorney, and the following former members of the Board of Trustees of the Police Relief and Pension Fund: Dr. Wm. McCracken, John E. Slavich, M.D., Harold C. Holmes, Jr., and N. M. Ashley, M.D. Not only is any claim for a pension barred by the statutes of limitation, but the matter has been completely litigated in the two cases of *Ellenberger* v. *City of Oakland, supra,* and the decisions in those cases are res judicata.

In addition to the general charges, it is alleged that defendant John Hassler, City Manager, "refused proper investigation of the records pertaining to said George Ellenberger," petitioner's husband, and that while defendant Hassler has been notified that there are seven conflicting records of death, he has taken no action to establish the true records, and has failed to expose those who petitioner claims have violated the law. While defendant Ashley is charged as a member of the Board of Trustees of the Police Relief and Pension Fund, he is also charged as Health Officer with failure to file true records concerning the cause of death of Ellenberger. It is alleged that defendant Tracy, when he was Captain of Inspec-

tors, denied requests for investigations and law enforcement made by petitioner, and as Chief of Police he refused to produce a certain police record; that he knew or should have known of the false records and that the pension board has violated their public trust; that defendants McCracken, Holmes and the then Assistant City Attorney, Collier, aided petitioner's own attorney to conceal the truth at the pension board hearings; that Assistant City Attorney Collier made a statement to the trial court in the first case of *Ellenberger* v. *City of Oakland, supra,* which was false.

It is obvious that no actionable cause is alleged against any of the defendants in this group.

### NOTICE OF APPEAL

The defendants in this category contend that the notice of appeal is defective. It reads that the appeal is "from the judgment and order sustaining demurrers without leave to amend, made and entered . . . on the 1st day of September, 1948. Said judgment sustaining demurrers is now of record in Liber 326, at page 970, Records of the County Clerk of Alameda County, California." Admittedly the judgment for these defendants is entered in Liber 326, at page 971. As the proper date of making and entry is set forth, we deem this variance immaterial. Likewise the fact that petitioner is attempting to appeal from the order sustaining demurrers (from which there is no appeal) as well as from the judgment, is immaterial.

### WILLIAM MOOREHEAD, SECRETARY OF THE HEATH CLUB, AND CHARLES WADE SNOOK

It is alleged that defendant Moorehead employed an attorney to represent petitioner before the pension board; that after six months this attorney refused to present petitioner's case and Attorney Wade Snook was paid by the Heath Club to represent her, but he conspired to obstruct justice, did not properly represent her, and failed to expose the fraud which petitioner claims prevented the pension board from granting her a pension; that later, he declined to represent her in court, as did the Heath Club; that the failure of both defendants Moorehead and Snook to protect petitioner's interests had obstructed justice. Again, no cause of action is stated against these defendants.

If any cause of action for damages for fraud were set up against any of the defendants, and none is, such cause would

be barred by section 338, subdivision 4, of the Code of Civil Procedure (or at the latest by Code Civ. Proc., § 343 (4 yrs.)), which limits actions for relief on that ground to three years from the discovery of the fraud, which discovery petitioner alleges she made on March 29, 1944, more than four years prior to filing this action.

In her opening brief petitioner mentions the date "Dec. 17, 1947" as the date of the "accrual" of her cause of action, and the date upon which the statute of limitations would commence to run. Just what this date refers to cannot be determined, as no such date appears in the petition. At argument, petitioner stated this was a clerical error and should have read "1944." It may be, however, that petitioner on December 17, 1947, asked some of the defendants to "protect her civil rights" arising from the death of her husband when "no proper action was taken." But as her petition shows, all of the facts were known to her on March 29, 1944. Moreover, prior to that date she had been importuning the defendants to protect her civil rights and they had refused. At the latest, that date would start the statutes of limitation running.

Petitioner, at oral argument, seemed to be under the erroneous impression that regardless of the date of the occurrence or of its discovery, the statutes of limitation would not begin to run as long as she was contacting various public officials to get them to do what she contends is their duty.

It is apparent that, at best, this petition attempts to set up matters which were completely litigated in the preceding cases, and which are res judicata. The trial court properly sustained the demurrers without leave to amend.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied April 22, 1949.