[L. A. No. 19306. In Bank. Mar. 21, 1952.]

SOUTHWESTERN INVESTMENT CORPORATION (a Corporation), Appellant, v. CITY OF LOS ANGELES, Respondent.

Harold B. Cooper for Appellant.

Ray L. Chesebro, City Attorney, John L. Flynn, Assistant City Attorney, and Weldon L. Weber, Deputy City Attorney, for Respondent.

Lawrence L. Otis, Gilbert E. Harris, James F. Healey, Jr., and Harold Arman, as Amici Curiae on behalf of Respondent.

SHENK, J.—On January 28, 1946, the District Court of Appeal, Second District, Division One, affirmed a judgment adverse to the plaintiff, Southwestern Investment Corporation, in an action to establish a resulting trust by virtue of certain transactions had with the defendant, City of Los Angeles. (72 Cal.App.2d 689 [165 P.2d 497].) A petition for rehearing was denied on February 14, 1946. A petition for hearing in this court was denied on March 28, 1946. The remittitur issued and was filed in the superior court on April 2, 1946.

On November 3, 1950, the plaintiff filed in the District Court of Appeal a notice of motion to recall the remittitur and reinstate the cause. The motion was grounded on misapprehension of the facts and on inadvertence caused by fraud or imposition on the court. The motion was granted on September 12, 1951, on the ground of the court's misapprehension of the facts when it rendered the prior decision. The defendant filed in this court a petition for hearing and a petition for the writ of prohibition. On November 8, 1951, the petition for hearing was granted.

The petition for hearing was granted because of a serious doubt arising as to whether the effect of the granting of the motion was in fact to cure an inadvertence or mistake of the court or was merely to correct judicial error. The sufficiency of the explanation to excuse the delay in making the motion was also considered to require investigation. The opinion on its face was deemed insufficient to justify the order and might create a dangerous precedent, as will appear from the following discussion.

As is quite usual in such cases, the moving party seeks a modification of the judgment. In this case the plaintiff seeks a modification by correction of the trial court's findings to accord with the asserted facts, and a reversal of the adverse judgment with possible directions to enter judgment in its favor.

That a remittitur may be recalled on the reviewing court's own motion, on motion or petition after notice supported by affidavits, or on stipulation setting forth the facts which will justify the granting of the order is now determined by rule. (Rule 25(d), Rules on Appeal; 36 Cal.2d at p. 22.) The question as to when the facts constitute grounds for the granting of the motion is resolved by the case law. ▮ Other than for the correction of clerical errors, the recall may be ordered on the ground of fraud, mistake or inadvertence. The recall may not be granted to correct judicial error. (*Rowland* v. *Kreyenhagen*, 24 Cal. 52, 59; *Trumpler* v. *Trumpler*, 123 Cal. 248, 252-253 [55 P. 1008]; *Estate of Ross*, 189 Cal. 317, 318 [207 P. 1014]; *Isenberg* v. *Sherman*, 214 Cal. 722, 725-726 [7 P.2d 1006]; *In re Roth-rock*, 14 Cal.2d 34, 38-39 [92 P.2d 634]; *In re McGee*, 37 Cal.2d 6, 8-9 [229 P.2d 780]; *Haydel* v. *Morton*, 28 Cal.App. 2d 383, 385 [82 P.2d 623]; *Chaney* v. *Los Angeles County Etc. Retirement Board*, 61 Cal.App.2d 701, 703 [143 P.2d 707]; *Ellenberger* v. *City of Oakland*, 76 Cal.App.2d 828, 830 [174 P.2d 461].) In the McGee case it was pointed out that a decision is inadvertent if it is the result of over-sight, neglect or accident, as distinguished from judicial error. In *Chin Ott Wong* v. *Title Ins. & Trust Co.*, 91 Cal.App.2d 1 [204 P.2d 387], an order recalling the remittitur was vacated when on analysis it appeared that the purpose of the recall was merely to amend the judgment on appeal.

The salient facts (given in greater detail in 72 Cal.App.2d 689) which were before the court on the appeal are the following:

Henry G. Weyse formerly owned approximately 15 acres at Washington Boulevard and Alameda Street in Los Angeles which formed a depression about 400 feet wide known as the Diamond Pit. In May, 1927, Weyse gave to the plaintiff corporation on a 50 per cent royalty basis the exclusive leasehold right to use the pit for dumping purposes. On November 22, 1929, Weyse deeded to the city for a consideration of $175,000 a 90-foot right of way (later amended to 90 feet and the necessary slopes) through the pit for the purpose of extending Washington Boulevard. Weyse granted a temporary easement around the southerly side of the pit for rerouting Washington Boulevard. Through various written negotiations had among the plaintiff, the city and the Board of Public Works, grant deeds to the remaining acre-

age passed through escrow from Weyse to the city; and quitclaim deeds containing no reservations or exceptions were executed to the city by the plaintiff upon payment of $8,500. At some time during the transactions delinquent taxes and penalties to the extent of about $32,000 were cancelled. (See *City of Los Angeles* v. *Ford,* 12 Cal.2d 407 [84 P.2d 1042].) The deeds, which provided for reversionary interests when the fill was completed, were accepted by the city on November 26, 1935. On December 18, 1935, the Board of Public Works wrote to the plaintiff giving consent to the use by the plaintiff of the southerly portion of the pit for dumping purposes. This consent was without authorization by the city, and on June 10, 1936, the city evicted (the plaintiff says ''ejected'') the plaintiff from the pit.

On December 18, 1938, the plaintiff commenced the action to impress a trust in the nature of a resulting trust on the defendant to protect the dumping rights which it alleged were retained by virtue of the transactions involved. The trial court's judgment determined that the city acquired a fee title and all rights of ownership and possession in and to the pit, and that the cause was barred by laches. The plaintiff appealed on a settled statement. In the decision on appeal the court noted that fraud was not an issue in the case, that the pleadings contained no allegations of mistake, and that the plaintiff did not seek cancellation or reformation of the instruments in question. The plaintiff sought to base its cause for impressing a trust of its dumping rights upon representations and negotiations occurring prior to the execution of the deeds executed by the plaintiff, which were had not with the city council but with members of the Board of Public Works and the city engineer. The court pointed out facts indicating that the plaintiff was aware before executing the deeds that there could not be amendment of the escrow instructions to reserve its dumping rights without authorization by the city council. The court held that without reformation, the nature of the title acquired was determined by the clear and unambiguous language of the instruments and not by the declarations of the parties in the negotiations or agreements otherwise; also that there was no instrument in the nature of a defeasance which could be considered a part of the transaction.

Answering the plaintiff's contention that the quitclaim deeds were delivered solely to enable the city to obtain a

cancellation of the taxes, the court stated that there was no evidence to justify the conclusion or to rebut the presumption that official duty had been regularly performed. The court rejected the contention that the $8,500 consideration received by the plaintiff was grossly inadequate in the absence of the issues of fraud, mistake or any of the grounds for cancellation or reformation of the instruments. The finding of laches was not considered because of the adequacy of other grounds for determination of the issues on appeal. The court rejected as without merit additional contentions in criticism of the findings and conclusions and the failure to find on material issues. The judgment of affirmance followed.

More than three and a half years elapsed after the filing of the remittitur before the plaintiff sought to have it recalled. An affidavit of its president was submitted on the motion, the major portion of which is devoted to an explanation of why the plaintiff did not make the move sooner. The averments show that in this interim the affiant was attempting to invoke other means of redress to regain the plaintiff's dumping rights, such as by persuasion upon the city council voluntarily to act in the matter, and by appealing to local newspapers, organizations and citizens for support of an equitable claim pursued before the council. ▆ Preparation of voluminous notes and attempts to engage attorneys might excuse a reasonable delay. But time spent in the unsuccessful pursuit of nonjudicial redress does not excuse the failure to pursue the judicial course when the law requires that that course be initiated promptly. (*Cf. Ellenberger* v. *City of Oakland, supra,* 76 Cal.App.2d 828, 836.) In the Rothrock case (*supra,* 14 Cal.2d 34) the motion to recall the remittitur was granted about three years after the judgment on appeal became final, but the defendant had promptly and diligently invoked redress through the courts. There it appeared that the judgment of this court on the appeal was mistakenly based on the assumption that the defendant in the criminal prosecution had not made a motion for a new trial. The record showed otherwise and it became obvious that not to correct the court's mistake by amending the judgment would result in a gross injustice. ▆ Unlike the Rothrock case the present situation does not involve the mistaken assumption of a procedural fact upon which the judgment of the court depended. Here the judgment of affirmance was based on the holding that the

trial court correctly determined that the executed instruments were clear and unambiguous and conveyed the entire title and possessory rights without any reservations or exceptions and under circumstances which did not admit of a resulting trust. On the motion to recall the remittitur the plaintiff sought to establish that the court decided the cause "under a misapprehension of the true facts." In the petition the plaintiff alleges inconsistencies in the findings of the trial court and supposed contradictions on the face of the opinion of the District Court of Appeal. It is unnecessary to take up seriatim the finding by finding and paragraph by paragraph method adopted by the plaintiff. The plaintiff's exposition indicates that if any so-called misapprehension existed in the mind of the court, it was not produced by any fraud or imposition nor based on the mistaken assumption of the existence or nonexistence of a fact of record or otherwise. There is no inconsistency between the finding that in 1927 the plaintiff obtained the exclusive possessory rights in the Diamond Pit and the conclusion that ultimately the city had those possessory rights by virtue of the quitclaim deeds from the plaintiff. In view of the trial court's finding and the appellate court's holding of evidentiary insufficiency, the plaintiff's insistence that these instruments were executed solely to permit the city to obtain cancellation of the tax liens is of no avail on this motion.

The documentary and other facts on which the plaintiff now relies were matters of record before the District Court of Appeal when it determined the points presented on the appeal. The asserted inconsistencies in the findings and contradictions in the opinion were presented to that court on a petition for rehearing and to this court on a petition for hearing. In sum and substance all that the plaintiff is now asking is that the District Court of Appeal reverse itself. ■ But an appellate court has no appellate jurisdiction of its own judgment; and it has no power to recall the remittitur for the purpose of reconsidering or modifying its judgment on the merits.

■ The decisions above cited establish that the extraordinary remedy by motion to recall the remittitur may be invoked only in cases of fraud or imposition practiced upon the court or upon the opposite party, or where the judgment was based on a mistake of fact or occurred through inadvertence. None of these is present when the court renders the judgment advisedly upon the case as presented by the par-

ties. (*Estate of Ross, supra,* 189 Cal. 317, 318.) Here the court's asserted misapprehension of the evidentiary facts is not a ground of recall. There is no fraud. There is no mistake or inadvertence, such as in the Rothrock case where the court failed to note the existence of a fact of record which materially affected the result as distinguished from the determination on the merits. ▮ Mistake or inadvertence is not supported by a declaration that on the presentation of the same facts and matters in issue the court now arrives at a different conclusion on the merits. ▮ A motion to recall the remittitur is not justified as an opportunity to the parties to relitigate their cause nor to the appellate court to redetermine the merits. The plaintiff used all the available opportunities for reconsideration of the cause. It may not now by the device of a motion to recall the remittitur secure an additional rehearing on the merits and thereby obtain a modification of the judgment or a different judgment. (*Isenberg* v. *Sherman, supra,* 214 Cal. 722, 725; see, also, *Chin Ott Wong* v. *Title Ins. & Trust Co., supra,* 91 Cal.App.2d 1, 2.)

▮ It follows from the foregoing that the motion to recall. the remittitur should be denied. But since the motion is to the District Court of Appeal, the correct disposition after petition for hearing granted is to return the proceeding to that court with appropriate direction. (See *Heroux* v. *Atchison, T. & S. F. Ry. Co.,* 14 Cal.2d 285 [93 P.2d 805].) This course renders unnecessary the consideration or disposition of the petition for the writ of prohibition except to deny it. Accordingly the petition for the writ of prohibition is denied and the motion to recall the remittitur is retransferred to the District Court of Appeal, Second Appellate District, Division One, with directions to deny the motion.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion correctly states the rule as announced by the decisions of this court and the District Courts of Appeal with respect to when a remittitur may be recalled, and it is in the application of the rule to the facts of the case at bar that I disagree with the majority. On the other hand, I agree with the views expressed in the opinion prepared by Mr. Presiding Justice White when this case was

before the District Court of Appeal, Second Appellate District, Division One (*(Cal.App.) 235 P.2d 388).

The line of cleavage between what constitutes mistake or inadvertence and judicial error is somewhat obscure and there would be little value in suggesting supposititious cases which would justfy the application of the rule. There are, however, cases in the reports which seem to me to go farther than we would be required to go in the instant case to sustain the holding of the District Court of Appeal that the remittitur be recalled. In *Crum* v. *Mt. Shasta Power Corp.*, 220 Cal. 295 [30 P.2d 30], this court was faced with a problem arising out of prior decisions of the District Court of Appeal in the same case. In that case the District Court of Appeal had rendered an opinion reversing the judgment (*Crum* v. *Mt. Shasta Power Corp.*, 117 Cal.App. 586 [4 P.2d 564]; *Albaugh* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 612 [4 P.2d 574]) and a petition for hearing was denied by this court. Thereafter a motion to recall the remittitur was made in the District Court of Appeal and denied by opinion (*Crum* v. *Mt. Shasta Power Corp.*, 124 Cal.App. 90 [12 P.2d 134]; *Albaugh* v. *Mt. Shasta Power Corp.*, 124 Cal.App. 779 [12 P.2d 137]), and a petition for hearing was denied by this court. The case was then retried and judgment was again recovered by plaintiff, which judgment was reviewed by this court by its decision reported in 220 Cal. 295 [30 P.2d 30]. Because of misstatements of both fact and law contained in the opinions of the District Court of Appeal, this court was confronted with the problem of reconciling irreconcilable conflicts in the law as declared by the District Court of Appeal in that case. This court purported to reconcile these conflicts by a process of reasoning which in effect nullified the holding of the District Court of Appeal on the basic legal theory upon which its decisions were rendered. Although the decisions of the District Court of Appeal had become final and the rules of law therein announced had become the law of the case, this court was compelled to say that it could not accept the rules of law therein announced and decided the case in disregard of those rules.

Likewise, in the case of *Greenfield* v. *Mather*, 32 Cal.2d 23 [194 P.2d 1], this court was required to hold that two prior decisions of this court in a companion case (*Mather* v. *Mather*,

22 Cal.2d 713 [140 .P.2d 808], 25 Cal.2d 582 [154 P.2d 684]) were erroneously decided because of a misapprehension of the facts, and that even though the judgments in those two prior decisions had become final, they could not be followed by this court and were not res adjudicata.

I do not think it can be said that the mistakes made in both the Crum and Mather cases cannot be classified as judicial error. In the Crum case the District Court of Appeal so garbled and misstated the facts that the rules of law which it applied could not be made applicable to the facts disclosed by the record, and when the case finally got before this court on the second appeal, and the true facts were stated, this court found it impossible to apply the rules of law which had been announced by the District Court of Appeal. There can be no doubt that the misstatement of the facts and the misapplication of the rules of law by the District Court of Appeal in that case amounted to judicial error. While this court had the opportunity to correct such error both on a petition for hearing after decision of the case on its merits, and on petition for hearing after denial of plaintiff's motion to recall the remittitur, it did not do so. So the responsibility for the judicial error involved in that case was cast upon this court as well as the District Court of Appeal. In the Mather case the error consisted of a misapprehension of the facts by this court. There can be no question but that such misapprehension was due to judicial inadvertence and amounted to judicial error.

I can see no distinction in recalling a remittitur to correct such error or overruling or refusing to follow a prior decision of this court or of a District Court of Appeal in the same case regardless of whether we term the prior adjudication as the law of the case, res adjudicata, or *stare decisis*. In other words, my theory is that if an appellate court makes a mistake in stating the facts of a case which results in a decision contrary to what should have been reached had the facts been correctly stated, it should have the power, and it is the duty of such court when the true facts are called to its attention, to recall the remittitur and render a decision in accordance with the correct state of facts. I believe this should be the rule regardless of whether the misstatement of fact in the prior decision is due to ignorance, caprice or fraud on the part of the court or the lawyers or litigants involved.

Fear that such a rule may have the effect of destroying the finality of judgments and injuriously affecting rights of innocent third persons which may intervene between the erroneous decision and the recall of the remittitur, may be obviated by the recognition of the validity of any rights of innocent third parties which have intervened. Under this rule a court would not be faced with the unhappy dilemma of seeing justice thwarted because of its impotency to correct an error for which it alone is responsible.

I would permit the decision of the District Court of Appeal recalling the remittitur in this case to stand, to the end that it may reconsider and decide the case anew on its own merits.

Appellant's petition for a rehearing was denied April 17, 1952. Carter, J., was of the opinion that the petition should be granted.